Ann Marie Mortimer (State Bar No. 169077)
amortimer@HuntonAK.com
Jason J. Kim (State Bar No. 221476)
kimj@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: (213) 532-2000
Facsimile: (213) 532-2020

Attorneys for Defendant
UNDER ARMOUR, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REBECCA ELIZABETH MURRAY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>UNDER ARMOUR, INC., a Maryland corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants. | CASE NO.:  2:18-CV-04032 FMO (Ex)<br><br>**DEFENDANT UNDER ARMOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY LITIGATION**<br><br>[*Declaration of Christopher Peters and [Proposed] Order filed concurrently herewith*]<br><br>DATE:    June 28, 2018<br>TIME:    10:00 a.m.<br>ROOM:  6D<br><br>Complaint Filed:   April 4, 2018 |

*Left margin vertical text:* **Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**NOTICE OF MOTION AND MOTION**

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on June 28, 2018 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 6D of the above-entitled Court located at 350 West First Street, 6th Floor, Los Angeles, California 90012, Defendant Under Armour, Inc. ("Under Armour") will move this Court for an order compelling individual arbitration of Plaintiff's claims and dismissing this action with prejudice or, in the alternative, staying this action pending the completion of individual arbitration proceedings.

This motion is made under the Federal Arbitration Act on the grounds that Plaintiff expressly agreed to arbitrate her claims with Under Armour on an individual basis when she agreed to Under Armour's "Terms and Conditions of Use."

Alternatively, should the Court decline to enforce Plaintiff's arbitration agreement (and it should not), the Court should dismiss Plaintiff's complaint in its entirety under Rule 12(b)(6). Plaintiff agreed Maryland law would govern this dispute in the Terms and Conditions to which she agreed, thus rendering her California Constitution and statutory claims subject to dismissal. And even if Plaintiff had pled those claims under Maryland law, they would fail nonetheless for the reasons addressed herein. Plaintiff's contract claim similarly fails because it is fatally vague and uncertain, and it fails to allege any breach on the part of Under Armour whatsoever, much less cognizable damages. Plaintiff's negligence claims likewise fail under the economic loss rule because, as alleged, she suffered no personal injury or property damage as a result of any alleged act or omission of Under Armour. Moreover, the negligence claims fail because Plaintiff has not and cannot allege cognizable damages. Finally, Maryland law does not recognize Plaintiff's claims for breach of the implied covenant of good faith and fair dealing or negligence *per se*.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Christopher Peters filed

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  concurrently herewith, all the pleadings and papers on file herein, and on such other
2  evidence and argument as may be presented at the hearing on this matter.  This motion
3  is made following the conference of counsel pursuant to L.R. 7-3 which took place on
4  May 15, 2018.
5
6  DATED:  May 29, 2018                    **HUNTON ANDREWS KURTH LLP**
7
8
9                                          By:  /s/ Ann Marie Mortimer
10                                               Ann Marie Mortimer
                                               Attorneys for Defendant
11                                             UNDER ARMOUR, INC.

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   BACKGROUND ...................................................................................2

      A.    Plaintiff Registered For MyFitnessPal .......................................2

      B.    Plaintiff Agreed To Arbitrate Her Claims Against Under Armour,
            And She Agreed To Do So On An Individual Basis.................................4

      C.    Plaintiff Violated Her Arbitration Agreement By Filing This
            Putative Class Action In Court..................................................5

III.  LEGAL STANDARD ............................................................................5

IV.   PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HER
      CLAIMS ON AN INDIVIDUAL BASIS.............................................6

      A.    The FAA Applies .........................................................................6

      B.    Plaintiff Agreed To Arbitrate Arbitrability.................................6

      C.    Even If The Court Decides Arbitrability, Plaintiff Cannot Avoid
            Her Agreement To Arbitrate .......................................................9

            1.    The Parties' Arbitration Agreement Is Valid And
                  Enforceable.....................................................................10

            2.    The Arbitration Agreement Covers Plaintiff's Claims.................11

      D.    Plaintiff's Class Claims Cannot Proceed..................................12

      E.    The Lawsuit Should Be Dismissed—Or At The Very Least
            Stayed—Pending Arbitration Of Plaintiff's Individual Claims .............13

V.    EVEN IF THE COURT DECLINED TO SEND PLAINTIFF'S CLAIMS
      TO ARBITRATION, THEY ARE SUBJECT TO DISMISSAL....................13

      A.    Maryland Law Applies ...............................................................14

      B.    Plaintiff's California Constitution And Statutory Claims Fail In
            Light Of Her Agreement To Apply Maryland Law .................................14

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

i

C.     Even If Plaintiff Had Brought Her California Constitution And
       Statutory Claims Under Maryland Law, They Would Fail ....................15

       1.     Plaintiff Cannot Plead An Invasion Of Privacy Claim Under
              Maryland Law.................................................................................15

       2.     Plaintiff Cannot Plead A Statutory Claim Under The
              Maryland Personal Information Protection Act ...........................16

       3.     Plaintiff Cannot Plead A Statutory Claim Under The
              Maryland Consumer Protection Act ............................................16

D.     Plaintiff's Contract Claim Fails...............................................................18

E.     Plaintiff's Negligence Claims Fail Under The Economic Loss Rule
       And For Additional Independent Reasons ..............................................20

F.     Plaintiff's Implied Covenant Claim Fails ...............................................22

VI.    CONCLUSION .................................................................................................22

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abat v. Chase Bank USA, N.A.*,
   738 F. Supp. 2d 1093 (C.D. Cal. 2010) ................................................................15

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995) ..................................................................................................6

*Am. Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013) ............................................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................13

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ..........................................................................................5, 13

*Azoulai v. La Porta*,
   2016 WL 9045852 (C.D. Cal. Jan. 25, 2016) ........................................................13

*Bailer v. Erie Ins. Exch.*,
   687 A.2d 1375 (1997) .............................................................................................15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................13

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ..............................................................................6, 7

*Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*,
   889 F. Supp. 2d 1198 (E.D. Cal. 2012) .................................................................14

*Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*,
   113 F. Supp. 3d 807 (D. Md. 2015).......................................................................20

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000)..................................................................................5

*Circuit City Stores, Inc. v. Najd*,
   294 F. 3d 1104 (9th Cir. 2002) ..............................................................................11

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

iii

*Citaramanis v. Hallowell*,
    613 A.2d 964 (Md. 1992)......................................................................17, 18

*Cont'l Masonry Co. v. Verdel Constr. Co.*,
    369 A.2d 566 (Md. 1977)............................................................................18

*Crawford v. Beachbody, LLC*,
    2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ...............................................9

*Cristo v. Charles Schwab Corp.*,
    2018 WL 1737544 (S.D. Cal. Apr. 11, 2018)............................................10

*Delgado v. Progress Fin. Co.*,
    2014 WL 1756282 (E.D. Cal. May 1, 2014) .............................................11

*DeVries v. Experian Info. Sols., Inc.*,
    2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ...............................................8

*DIRECTV, Inc. v. Imburgia*,
    136 S. Ct. 463 (2015)................................................................................12

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
    2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) .............................................21

*Dynport Vaccine Co. LLC v. Lonza Biologics, Inc.*,
    2015 WL 2036510 (D. Md. Apr. 30, 2015)..........................................21, 22

*Feld v. Am. Express Co.*,
    2010 WL 9593386 (C.D. Cal. Jan. 25, 2010) ...........................................15

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ........................................................8

*Gardner v. First Data Corp.*,
    2013 WL 12138705 (C.D. Cal. Sept. 17, 2013).................................7, 14, 16

*Giroux v. Essex Prop. Trust, Inc.*,
    2017 WL 1549477 (N.D. Cal. May 1, 2017) .............................................18

*Graf v. Match.com, LLC*,
    2015 WL 4263957 (C.D. Cal. July 10, 2015).....................................9, 13, 14

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000).......................................................................................5

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

iv

*Green v. Wells Fargo Bank, N.A.*,
    927 F. Supp. 2d 244 (D. Md. 2013).................................................17

*Guadagno v. E\*Trade Bank*,
    592 F. Supp. 2d 1263 (C.D. Cal. 2008) ..............................................10

*Hill v. Peoplesoft USA, Inc.*,
    412 F.3d 540 (4th Cir. 2005)..............................................10, 11

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002).................................................................9

*Koyoc v. Progress Fin. Co.*,
    2014 WL 1878903 (C.D. Cal. May 9, 2014) ......................................12

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013).............................................6

*Lawyers Title Ins. Corp. v. Rex Title Corp.*,
    282 F.3d 292 (4th Cir. 2002).............................................21

*Lewis v. UBS Fin. Servs. Inc.*,
    818 F. Supp. 2d 1161 (N.D. Cal. 2011) .....................................13

*Lloyd v. Gen. Motors Corp.*,
    916 A.2d 257 (Md. 2007)................................................17

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)..................................................8

*Mortensen v. Bresnan Commc'ns LLC*,
    722 F.3d 1151 (9th Cir. 2013)...............................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).......................................................9, 11

*Mount Vernon Properties, LLC v. Branch Banking And Tr. Co.*,
    907 A.2d 373 (Md. 2006)...............................................22

*Nedlloyd Lines B.V. v. Sup. Ct.*,
    3 Cal. 4th 459 (1992) ...................................................14

*Nixon Unif. Serv., Inc. v. Am. Directory Serv. Agency, Inc.*,
    693 F. Supp. 367 (D. Md. 1988) .........................................20

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

v

*Oracle Am., Inc. v. Myriad Grp., A.G.*,
  724 F.3d 1069 (9th Cir. 2013) ..................................................................6

*Polek v. J.P. Morgan Chase Bank, N.A.*,
  36 A.3d 399 (Md. 2012) ..........................................................................18

*Pulte Home Corp. v. Parex, Inc.*,
  923 A.2d 971 (Md. 2007) .........................................................................20

*Qbex Computadoras S.A. v. Intel Corp.*,
  2017 WL 5525939 (N.D. Cal. Nov. 17, 2017) .......................................15

*Rappley v. Portfolio Recovery Assocs., LLC*,
  2017 WL 3835259 (C.D. Cal. Aug. 24, 2017).......................................10

*Remsburg v. Montgomery*,
  831 A.2d 18 (Md. 2003)...........................................................................22

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010).....................................................................................6

*Simmons v. Hankey*,
  2017 WL 424850 (C.D. Cal. Jan. 30, 2017) ..........................................11

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ...........................................17, 21

*Sparling v. Hoffman Const. Co., Inc.*,
  864 F.2d 635 (9th Cir. 1988)....................................................................13

*St. James v. Equilon Enterprises, LLC*,
  2008 WL 4279415 (S.D. Cal. Sept. 15, 2008)........................................15

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010)..................................................................................12

*Strotz v. Dean Witter Reynolds*,
  223 Cal. App. 3d 208 (1990)....................................................................11

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011).......................................................8

*Tate v. Progressive Fin. Holdings, LLC*,
  2017 WL 4804354 (C.D. Cal. Oct. 24, 2017)..........................................13

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

vi

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 2650689 (N.D. Cal. July 6, 2011)......................................................11

*Tucker v. Specialized Loan Servicing, LLC*,
  83 F. Supp. 3d 635 (D. Md. 2015) ........................................................19

*United States v. Sutcliffe*,
  505 F.3d 944 (9th Cir. 2007)........................................................6

*Washington Mut. Bank, FA v. Sup. Ct.*,
  24 Cal. 4th 906 (2001) ........................................................10

*Wiseley v. Amazon.com, Inc.*,
  709 F. App'x 862 (9th Cir. 2017)........................................................8

**Rules & Statutes**

9 U.S.C. § 1 ........................................................*passim*

9 U.S.C. § 2 ........................................................5

9 U.S.C. § 4 ........................................................6

Cal. Civ. Code § 1798.80........................................................14

Federal Rule of Civil Procedure 12 ........................................................22

Federal Rule of Civil Procedure 14 ........................................................7

Federal Rule of Civil Procedure 8 ........................................................18

Md. Code, Com. Law § 13-101........................................................16, 17, 18

Md. Code, Com. Law § 14-3501........................................................1, 16, 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On March 29, 2018, Under Armour, Inc. announced that four days earlier it became aware of a criminal intrusion into MyFitnessPal, Under Armour's online food and nutrition application.  As stated in the announcement, the criminals accessed usernames, email addresses, and hashed passwords.  The announcement expressly stated that payment information, which Under Armour collects and processes separately, was not affected by the breach.  And Under Armour does not collect identification information, such as social security numbers and driver's license numbers.[1]

A few days after Under Armour's announcement, Plaintiff Rebecca Murray filed this putative class action.  Her Complaint contains voluminous allegations about the possible ramifications of a generic data breach, but does not allege that she was actually harmed by this incident, or how she could be given the information obtained by the criminals.

But her Complaint suffers from an even more fatal flaw.  Plaintiff agreed to arbitrate the very claims she asserts here—and to arbitrate these claims on an individual basis.  Plaintiff should be held to her agreement and compelled to arbitrate.

By registering to use and continuing to use MyFitnessPal, she expressly agreed to Under Armour's Terms and Conditions of Use and corresponding Privacy Policy (together, the "Terms and Conditions").  The Terms and Conditions contain a clear and conspicuous arbitration provision, under which Plaintiff and Under Armour agreed:  (1) "to submit to the personal and exclusive arbitration of disputes relating to [Plaintiff's] general use of [Under Armour's] Services under the rules of the American Arbitration Association;" and (2) "that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

---

[1] *See* http://investor.underarmour.com/releasedetail.cfm?releaseid=1062368; *see also* Md. Code Com. Law §§ 14-3501, 14-3504.

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

representative action" (the "Arbitration Agreement").  *See* C. Peters Decl. ¶ 4, Exh. A (Terms and Conditions) § 16 at 30.

Plaintiff filed this putative class action in court, alleging various state law claims arising out of the criminal intrusion into Under Armour's network—including a claim that Under Armour breached the very Terms and Conditions that contain her agreement to arbitrate.  While Under Armour disputes Plaintiff's allegations, this Court need not and should not resolve them.  Plaintiff's claims fall squarely within the scope of the Arbitration Agreement, and she should be compelled to arbitrate them on an individual basis—just as she agreed.

Alternatively, and only to the extent any of Plaintiff's claims are not sent to arbitration (which they should be), Under Armour respectfully submits those claims should be dismissed nonetheless for the reasons set forth more fully herein.

## II.    BACKGROUND

### A.    Plaintiff Registered For MyFitnessPal

MyFitnessPal is a smartphone application and website that tracks diet and exercise to determine optimal caloric intake and nutrients for the user's goals. Plaintiff claims to have a MyFitnessPal account, and she purports to bring claims stemming from the theft of data associated with her account.  Compl. ¶¶ 1, 15.

The MyFitnessPal registration involves three steps.  C. Peters Decl. ¶ 5, Exh. B (Registration Screenshots):

**Step 1:**  On the first screen, called "Your Account Information," the registrant must submit an email address and a chosen password.  C. Peters Decl. ¶ 5, Exh. B (Registration Screenshots) at 79.  The registrant then has to press the "Continue" button just below those fields to proceed Step 2.  *Id.*

**Step 2:**  On the next screen, called "Tell Us About Yourself," the registrant provides information about herself and her fitness goals, as well as a chosen username.  C. Peters Decl. ¶ 5, Exh. B (Registration Screenshots) at 80.  The registrant cannot proceed past Step 2 unless she clicks the "Sign Up" button, where the

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

registrant is told that, "[b]y continuing, you agree to the Privacy Policy and Terms." *Id.*[2]  Both the "Privacy Policy" and the "Terms" are hyperlinked in blue font—thus, they can be viewed simply by clicking on them.  *Id.*[3]



**Step 3:**  On the third and final screen, called "Members Who Diet With Friends Lose 3X As Much Weight," the registrant has the option of entering the email addresses of up to five friends; or she can simply skip Step 3 by pressing the "Continue" button at the bottom of the screen.  C. Peters Decl. ¶ 5, Exh. B (Registration Screenshots) at 81.

---

[2] The relevant registration screen on MyFitnessPal's iPhone application is the same in all material respects, except it provides that, "By joining, you agree to our [blue hyperlinked] Privacy Policy and [blue hyperlinked] Terms."  C. Peters Decl. ¶ 5, Exh. B (Registration Screenshots) at 75.  As with the website registration process, that statement appears directly above the "Sign Up" button.  *Id.*

[3] The Terms and Conditions referenced herein were effective as of March 21, 2016 for all new and existing users of MyFitnessPal.  The prior MyFitnessPal terms and conditions also included an arbitration provision.  *See* C. Peters Decl. ¶ 6, Exh. C (June 11, 2013 Terms of Use) at 92–93.  In addition, those prior Terms expressly state on the first page in all caps:  "MYFITNESSPAL RESERVES THE RIGHT TO CHANGE THIS AGREEMENT AT ANY TIME UPON NOTICE TO YOU, TO BE GIVEN BY: (I) THE POSTING OF A NEW VERSION; AND/OR (II) A CHANGE NOTICE ON THE WEBSITE OR APPLICATION.  IT IS YOUR RESPONSIBILITY TO REVIEW THIS AGREEMENT PERIODICALLY.  You will be deemed to have agreed to any such modification or amendment by Your decision to continue using the Services following the date in which the modified or amended Agreement is posted."  *Id.* at 84.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**B.    Plaintiff Agreed To Arbitrate Her Claims Against Under Armour, And She Agreed To Do So On An Individual Basis**

The Terms and Conditions contain an Arbitration Agreement in a conspicuous section entitled, "Disputes and Arbitration, Jurisdiction and Venue."  C. Peters Decl. ¶ 4, Exh. A (Terms & Conditions) § 16 at 30.  The very first paragraph of that section provides:

> To the maximum extent permitted by applicable law, you and Under Armour agree that **any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action**.  Except where prohibited, **you and we agree to submit to the personal and exclusive arbitration of disputes relating to your general use of the Services under the rules of the American Arbitration Association**.  Arbitration is more informal than a lawsuit in court.  Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts.  Arbitrators can award the same damages and relief that a court can award.  Please visit www.adr.org for more information about arbitration.

*Id.* (emphasis added).  In that same section, MyFitnessPal users "acknowledge and understand that, with respect to any dispute with [Under Armour] arising out of or relating to the use of the Services":

- "You are giving up your right to have a trial by jury;" and
- "You are giving up your right to serve as a representative, as a private attorney general, or in any other representative capacity, or to participate as a member of a class of claimants, in any lawsuit involving any such dispute."

*Id.* at 31.

4

**C.** **Plaintiff Violated Her Arbitration Agreement By Filing This Putative Class Action In Court**

Each of Plaintiff's claims relate to her use of Under Armour's "Services," and thus, each of Plaintiff's claims fall within the scope of the Arbitration Agreement. All of Plaintiff's claims are based on allegations that she allegedly "entrusted" Under Armour with her information when she registered for and used MyFitnessPal "apps and websites," which Under Armour allegedly failed to protect. Compl. ¶¶ 1–3.

MyFitnessPal "websites" and "applications" are specifically designated as "Services" to which the Terms and Conditions and the Arbitration Agreement therein apply. C. Peters Decl. ¶ 4, Exh. A (Terms & Conditions) at 4. Irrespective of the merits of Plaintiff's claims (and Under Armour submits there are none), they are squarely encompassed by the Arbitration Agreement. Yet, despite Plaintiff's assent to the Arbitration Agreement, she filed this putative class action lawsuit in court.

## III.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") reflects a liberal federal policy favoring arbitration, and it requires the rigorous enforcement of arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts."). Indeed, the "FAA's purpose is to give preference (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013). Because "arbitration is favored," Plaintiff bears the heavy "burden of proving that the provision is unenforceable." *Id.* at 1157 (*citing Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)). Plaintiff cannot meet that burden.

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, courts must compel arbitration if the transaction involves interstate commerce, a written arbitration agreement exists, and the

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  agreement encompasses the dispute at issue.  *Chiron Corp. v. Ortho Diagnostic Sys.,*

2  *Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  All three are met here.

3  **IV.   PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HER**

4       **CLAIMS ON AN INDIVIDUAL BASIS**

5       **A.   The FAA Applies**

6       The FAA "governs the enforceability of arbitration agreements in contracts

7  involving interstate commerce."  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126

8  (9th Cir. 2013).  And the FAA's reach is broad indeed, encompassing transactions

9  "affecting commerce."  *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274–77

10  (1995).  There is no question the FAA applies here.

11       Plaintiff's use of MyFitnessPal plainly "affected commerce."  As stated above,

12  Plaintiff agreed to Under Armour's Terms and Conditions, which permit users to

13  access Under Armour's "Services," including MyFitnessPal.  *See* C. Peters Decl. ¶ 4,

14  Exh. A (Terms & Conditions) at 4.  And those internet-related "Services" include

15  "wellness related websites, applications, devices, hardware, content and other

16  technology products and services; our e-commerce websites and applications."  *Id.* at

17  4.  As the Ninth Circuit has held, "use of the internet is intimately related to interstate

18  commerce."  *United States v. Sutcliffe*, 505 F.3d 944, 952 (9th Cir. 2007).  The FAA

19  applies, and, as shown below, it compels enforcement of Plaintiff's Arbitration

20  Agreement.

21       **B.   Plaintiff Agreed To Arbitrate Arbitrability**

22       The FAA requires courts to compel arbitration "in accordance with the terms of

23  the agreement."  9 U.S.C. § 4.  Thus, when parties "clearly and unmistakably" agree

24  to have an arbitrator decide arbitrability, those issues must be referred to the arbitrator.

25  *Oracle Am., Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013); *Rent-A-*

26  *Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a

27  gateway issue is simply an additional, antecedent agreement the party seeking

28  arbitration asks the court to enforce, and the FAA operates on this additional

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

arbitration agreement just as it does on any other."); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–32 (9th Cir. 2015) ("[A] court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator.").  And here, the parties did so.

*First*, the Arbitration Agreement "clearly and unmistakably" delegates gateway arbitrability issues to the arbitrator—it incorporates the "rules of the American Arbitration Association."  C. Peters Decl. ¶ 4, Exh. A (Terms & Conditions) § 16 at 30.  Under Rule 14(a) of the AAA Consumer Arbitration Rules,[4] the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  As the Ninth Circuit has held, the parties' choice to incorporate that rule into the Arbitration Agreement is "clear and unmistakable" evidence of an agreement to delegate gateway arbitrability questions to the arbitrator.  *Brennan*, 796 F.3d at 1130 ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."); *see also id.* at 1130–31 ("Indeed, the vast majority of the circuits hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts.").

*Second*, Plaintiff assented to that delegation provision.  For starters, Plaintiff's first cause of action alleges a "breach of written contract."  While Plaintiff's allegations concerning that "written contract" are vague and uncertain at best, she quotes from the hyperlinked "Privacy Policy" that was in effect, incorporated into, and presented in the same manner and at the same time as the "Terms" containing the Arbitration Agreement.  Compl. ¶ 42.  Plaintiff cannot possibly claim she entered into

---

[4] AAA applies its "Consumer Arbitration Rules" to arbitration agreements that are "contained within a consumer agreement."  AAA Rule 1(a)(3), available at: https://www.adr.org/Rules.

1   a contract with Under Armour by agreeing to the hyperlinked "Privacy Policy," but

2   not the hyperlinked "Terms" that appeared alongside it and were contemporaneously

3   in effect.  And there is no basis for Plaintiff to do so in any event.

4   As shown above, "Plaintiff was provided with an opportunity to review the

5   [Terms] in the form of a hyperlink immediately [below] the '[Sign Up]' button."

6   *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011).

7   Moreover, Plaintiff could not have used Under Armour's services, including

8   MyFitnessPal, without clicking that button.  *See* C. Peters Decl. ¶ 5, Exh. B

9   (Registration Screenshots) at 80.  Courts routinely find consent to hyperlinked terms

10  of service in those circumstances.  *See, e.g.*, *Swift*, 805 F. Supp. 2d at 912 (user bound

11  by arbitration provision when website stated:  "By using YoVille, you also agree to

12  the YoVille [hyperlink] Terms of Service"); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66,

13  79–80 (2d Cir. 2017) (finding assent to arbitration provision in hyperlinked terms of

14  service:  "A reasonable user would know that by clicking the registration button, he

15  was agreeing to the terms and conditions accessible via the hyperlink, whether he

16  clicked on the hyperlink or not."); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835

17  (S.D.N.Y. 2012) ("[T]he page displays a second 'Sign Up' button similar to the button

18  the putative user clicked on the initial page.  The following sentence appears

19  immediately below that button:  'By clicking Sign Up, you are indicating that you

20  have read and agree to the Terms of Service.'"); *Wiseley v. Amazon.com, Inc.*, 709 F.

21  App'x 862, 864 (9th Cir. 2017) (finding assent to arbitration provision in hyperlinked

22  terms of service:  "The notices on Amazon's checkout and account registration pages,

23  which alerted Wiseley that clicking the corresponding action button constituted

24  agreement to the hyperlinked COU, were in sufficient proximity to give him a

25  'reasonable opportunity to understand' that he would be bound by additional terms.");

26  *DeVries v. Experian Info. Sols., Inc.*, 2017 WL 733096, at *5 (N.D. Cal. Feb. 24,

27  2017) (user bound by arbitration provision when website stated:  "Click 'Submit

28  Secure Order' to accept the [hyperlink] Terms and Conditions above, acknowledge

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

8

1   receipt of our [hyperlink] Privacy Notice and agree to its terms, confirm your

2   authorization for ConsumerInfo.com, Inc., an Experian company, to obtain your credit

3   report and submit your secure order"); *Graf v. Match.com, LLC*, 2015 WL 4263957,

4   at *4 (C.D. Cal. July 10, 2015) ("[A]ll users of the Match.com website during the

5   relevant time period were required to affirmatively agree to the Terms of Use when

6   they clicked on a 'Continue' or other similar button on the registration page where it

7   was explained that by clicking on that button, the user was affirming that they would

8   be bound by the Terms of Use, which were always hyperlinked and available for

9   review."); *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5,

10  2014) (customer bound by online terms of service when website stated that, "By

11  clicking Place Order below, you are agreeing that you have read and understand the

12  Beachbody Purchase Terms and Conditions").  There is no reason or basis to rule

13  differently here.  Indeed, Plaintiff has sued Under Armour for allegedly breaching the

14  Privacy Policy, which, in turn, is incorporated into the Terms and Conditions and

15  presented to Plaintiff in the same manner as the Terms and Conditions.

16         Plaintiff should be ordered to arbitrate arbitrability, as she clearly and

17  unmistakably agreed to do.

18  **C.**     **Even If The Court Decides Arbitrability, Plaintiff Cannot Avoid Her**

19         **Agreement To Arbitrate**

20         Even if the Court declined to enforce the parties' agreement to arbitrate

21  arbitrability (which it should not), the Court should still compel arbitration of

22  Plaintiff's claims on an individual basis.  In situations where parties delegated

23  arbitrability questions to the Court (which this is not), the Court's role under the FAA

24  remains limited to the following questions:  (1) whether there is a valid agreement to

25  arbitrate between the parties; and (2) whether the agreement covers the dispute.

26  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002).  In deciding those

27  questions, "any doubts concerning the scope of arbitrable issues should be resolved in

28  favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460

9

1    U.S. 1, 24–25 (1983).  Here, there is no question Plaintiff entered into a valid

2    agreement to arbitrate the claims asserted in this lawsuit.

3        **1.    The Parties' Arbitration Agreement Is Valid And Enforceable**

4        As an initial matter, Maryland law governs these questions, as the Terms and

5    Conditions designate the same as the "Governing Law."  C. Peters Decl., Exh. A

6    (Terms & Conditions) § 15 at 29; *Rappley v. Portfolio Recovery Assocs., LLC*, 2017

7    WL 3835259, at *4 (C.D. Cal. Aug. 24, 2017) (arbitrability questions resolved "using

8    the choice-of-law rules of the forum state").  Under California choice-of-law rules, to

9    enforce the "Governing Law" provision, the Court need only find:  (1) the "chosen

10    state has a substantial relationship to the parties of their transaction;" or (2) "any other

11    reasonable basis for the parties' choice of law."  *Washington Mut. Bank, FA v. Sup.

12    Ct.*, 24 Cal. 4th 906, 916 (2001).  If the Court finds either, then Plaintiff carries a

13    heavy burden to overcome enforcement of the provision.  She must show "both that

14    the chosen law is contrary to a fundamental policy of California and that California

15    has a materially greater interest in the determination of a particular issue."  *Id.* at 917.

16        Applying that standard here, the "Governing Law" provision is plainly valid

17    and should be enforced.  As Plaintiff admits, Under Armour is domiciled in Maryland.

18    Compl. ¶ 7.  That alone establishes the requisite connection to the State.  *Guadagno v.

19    E*Trade Bank*, 592 F. Supp. 2d 1263, 1269 (C.D. Cal. 2008).  Moreover, Plaintiff

20    cannot show Maryland law is contrary to any fundamental California policy,

21    particularly given the outcome is the same under either State's laws.  Under Maryland

22    law, as in California, "to be binding and enforceable, an arbitration agreement must be

23    a valid contract."  *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005); *see

24    also Cristo v. Charles Schwab Corp.*, 2018 WL 1737544, at *5 (S.D. Cal. Apr. 11,

25    2018) (applying California law and finding that "binding contracts exist, including a

26    valid arbitration agreement").  And here, the Arbitration Agreement is a "valid

27    contract."  *Id.*

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

As stated above, Plaintiff plainly assented to the Arbitration Agreement. Moreover, there is ample consideration to support the Arbitration Agreement, given that the "Arbitration Agreement, on its face, unambiguously requires both parties to arbitrate." *Hill*, 412 F.3d at 544 (applying Maryland law); C. Peters Decl. ¶ 4, Exh. A (Terms & Conditions) § 16 at 30–31 ("[Y]ou and Under Armour agree . . ."; "you and we agree . . . "; "Both you and we agree to comply with the following rules . . ."; "This agreement to arbitrate will not preclude you or Under Armour . . .").[5]  Both mutual consent and valid consideration exist.  Plaintiff is bound.

## 2.    The Arbitration Agreement Covers Plaintiff's Claims

Because federal policy favors arbitration, courts must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration."  *Cone*, 460 U.S. at 24–25.  Here, the Arbitration Agreement broadly encompasses "disputes relating to [Plaintiff's] general use of the Services," which expressly include MyFitnessPal's website and application.  C. Peters Decl. ¶ 4, Exh. A (Terms & Conditions) § 16 at 30.

The Arbitration Agreement's "use of the 'relat[ing] to' language is a signal that the scope of the agreement is broad under Ninth Circuit case law and encompasses claims beyond the four corners of the contract."  *Delgado v. Progress Fin. Co.*, 2014 WL 1756282, at *5 (E.D. Cal. May 1, 2014); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 2650689, at *5 (N.D. Cal. July 6, 2011) ("[T]he language 'related to' must be read broadly" to encompass "matters that, while not arising directly under the contractual relationship, are nevertheless related to it.").  Accordingly, "Plaintiff's claims need only 'touch matters' covered by the contract containing the arbitration

---

[5] The same holds true under California law.  "As long as the agreement to arbitrate arbitrability is mutual, there is sufficient consideration."  *Simmons v. Hankey*, 2017 WL 424850, at *4 (C.D. Cal. Jan. 30, 2017); *Circuit City Stores, Inc. v. Najd*, 294 F. 3d 1104, 1108 (9th Cir. 2002); *Strotz v. Dean Witter Reynolds*, 223 Cal. App. 3d 208, 216 (1990) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other.").

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

provision." *Koyoc v. Progress Fin. Co.*, 2014 WL 1878903, at *4 (C.D. Cal. May 9, 2014). And here, they do.

As stated above, Plaintiff claims she "entrusted" Under Armour with her information when she registered for and used MyFitnessPal "apps and websites," which Under Armour allegedly failed to protect. Compl. ¶¶ 1–3. The Terms and Conditions, including the Arbitration Agreement therein, expressly extend to MyFitnessPal's website and applications. C. Peters Decl. ¶ 4, Exh. A (Terms & Conditions) at 4. On top of that, Plaintiff claims Under Armour breached the very Privacy Policy incorporated into the Terms and Conditions. Because Plaintiff's claims are inextricably intertwined with the Terms and Conditions containing the Arbitration Agreement, that Agreement covers Plaintiff's claims.

### D.  Plaintiff's Class Claims Cannot Proceed

The Court should dismiss Plaintiff's class claims and order the parties to arbitrate solely on an individual basis. As the Supreme Court held in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010), arbitration "is a matter of consent." Accordingly, courts cannot force parties into class proceedings to which they did not agree. *Id.* Rather, parties "may specify *with whom* they choose to arbitrate their disputes." *Id.* at 683 (emphasis in original). Stated differently, Under Armour "may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 684 (emphasis in original). And here, Under Armour did not agree to class arbitration; rather, the Arbitration Agreement expressly prohibits class claims.

As shown above, the Arbitration Agreement contains a class action waiver, and the Court should enforce it according to its terms. C. Peters Decl. ¶ 4, Exh. A (Terms & Conditions) § 16 at 30. The United States Supreme Court has held so repeatedly. *See, e.g.*, *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2308, 2312 (2013) (FAA does not permit courts to invalidate arbitration agreements because they do not permit class arbitration of federal claim); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463,

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

466-67 (2015) (FAA "pre-empts and invalidates" state law that would make a class action waiver unconscionable in consumer contract of adhesion); *Concepcion*, 563 U.S. at 336, 352 (same).  Under settled United States Supreme Court precedent, Plaintiff cannot proceed with her class claims before this Court or in arbitration.

**E.     The Lawsuit Should Be Dismissed—Or At The Very Least Stayed— Pending Arbitration Of Plaintiff's Individual Claims**

The Ninth Circuit empowers district courts "to dismiss a party's complaint where the court finds that the arbitration clause ensnares all of the party's claims." *Tate v. Progressive Fin. Holdings, LLC*, 2017 WL 4804354, at *4 (C.D. Cal. Oct. 24, 2017) (citing *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988); *Azoulai v. La Porta*, 2016 WL 9045852, at *5 (C.D. Cal. Jan. 25, 2016)); *see also Graf*, 2015 WL 4263957, at *6 ("Given that all of Plaintiff's claims are subject to arbitration, this action is dismissed.").

As shown above, Plaintiff's Arbitration Agreement "ensnares" all of her claims. Accordingly, the Court should dismiss this lawsuit in its entirety—including the putative class claims—so the parties may arbitrate Plaintiff's claims on an individual basis as agreed.  *See, e.g.*, *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) ("[T]he class action waivers are enforceable, which leaves only Plaintiff's individual claims remaining in this action.  Since those claims are subject to arbitration, dismissal is appropriate.").  At an absolute minimum, the Court should stay the lawsuit pending arbitration.

**V.     EVEN IF THE COURT DECLINED TO SEND PLAINTIFF'S CLAIMS TO ARBITRATION, THEY ARE SUBJECT TO DISMISSAL**

Even if the Court declined to send this dispute to arbitration (and it should not), Plaintiff's claims are subject to dismissal in any event because they fail to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**A.    Maryland Law Applies**

As stated above in Section IV(C)(1), the Terms and Conditions contain a valid and enforceable "Governing Law" provision that mandates the application of Maryland law.  C. Peters Decl. ¶ 4, Exh. A (Terms & Conditions) § 15 at 29.  There is no question that provision encompasses this dispute in its entirety, as the Terms and Conditions themselves broadly "govern [Plaintiff's] access to and use of [Under Armour's] Services," which expressly include the MyFitnessPal website and application.  *Id.* at 2.  Moreover, the "Governing Law" provision itself expressly states that the Terms and Conditions will be "governed by" Maryland law.  *Id.* at 27.  Courts interpret that phrase broadly to encompass all disputes that arise from or relate to the agreement—in this case, Plaintiff's use of MyFitnessPal and Under Armour's provision of that service.  *See*, *e.g.*, *Nedlloyd Lines B.V. v. Sup. Ct.*, 3 Cal. 4th 459, 470 (1992) (when a provision "provides that a specified body of law 'governs' the 'agreement' between the parties," it "encompasses all causes of action arising from or related to that agreement").  Accordingly, Maryland law applies to all of Plaintiff's claims, and, as shown below, bars them.

**B.    Plaintiff's California Constitution And Statutory Claims Fail In Light Of Her Agreement To Apply Maryland Law**

As stated above, Maryland law applies, and it exclusively governs this dispute.  Accordingly, Plaintiff's California Constitution and statutory claims[6]—Counts III through VI and Count IX—should be dismissed.  *See*, *e.g.*, *Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, 889 F. Supp. 2d 1198, 1235 (E.D. Cal. 2012), *aff'd*, 600 F. App'x 502 (9th Cir. 2015) (dismissing UCL claim after finding "New Jersey law is applicable in this action"); *Gardner v. First Data Corp.*, 2013 WL 12138705, at \*4

---

[6] Plaintiff's Ninth Claim for Relief alleging a "Violation of State Data Breach Acts" is fatally vague.  The only "data breach act" cited is California's Customer Records Act.  Because Plaintiff agreed to the application of Maryland law, however, that claim, as well as any non-Maryland statutory data breach claim, fails under the Terms and Conditions to which Plaintiff agreed.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

(C.D. Cal. Sept. 17, 2013) (dismissing "California Constitution and statutory claims" after finding "New York law applies to this case"); *Abat v. Chase Bank USA, N.A.*, 738 F. Supp. 2d 1093, 1096 (C.D. Cal. 2010) (California statutory claims barred by Delaware choice-of-law provision in contract); *Qbex Computadoras S.A. v. Intel Corp.*, 2017 WL 5525939, at *9 (N.D. Cal. Nov. 17, 2017) (denying leave to allege UCL claim after "find[ing] that the Delaware choice of law provision is enforceable"); *Feld v. Am. Express Co.*, 2010 WL 9593386, at *4 (C.D. Cal. Jan. 25, 2010) (dismissing UCL claim because Utah law governed parties' relationship); *St. James v. Equilon Enterprises, LLC*, 2008 WL 4279415, at *7 (S.D. Cal. Sept. 15, 2008) ("Plaintiff's emphasis on [Section 17200 of] the California Business & Professions Code is misplaced because this dispute . . . is governed by Texas Law.").

**C.**     **Even If Plaintiff Had Brought Her California Constitution And Statutory Claims Under Maryland Law, They Would Fail**

**1.**     **Plaintiff Cannot Plead An Invasion Of Privacy Claim Under Maryland Law**

Even if Plaintiff had brought her invasion of privacy claim under Maryland law, it would fail.  In Maryland, invasion of privacy is an intentional tort.  *See*, *e.g.*, *Bailer v. Erie Ins. Exch.*, 687 A.2d 1375, 1381 (Md. 1997).  And here, Plaintiff cannot possibly show Under Armour intentionally "invaded" her privacy.  Indeed, Plaintiff admits Under Armour fell victim to a data breach perpetrated "by an unauthorized third party."  Compl. ¶ 1.  By definition, "unauthorized" means Under Armour did not permit, desire, or intend the hackers to access Plaintiff's information.  Moreover, Plaintiff has sued Under Armour for negligently (*i.e.*, unintentionally) failing to prevent the data breach—that is the precise opposite of an intentional invasion of Plaintiff's privacy.  *Id.* ¶¶ 48–59.  Because Plaintiff has not and cannot establish the requisite intent, she cannot state a claim for invasion of privacy under Maryland law.  And because a finding of intent is impossible in the context of an "unauthorized" data

breach that Under Armour "negligently" failed to prevent, the dismissal should be with prejudice.

### 2.   Plaintiff Cannot Plead A Statutory Claim Under The Maryland Personal Information Protection Act

Maryland does not recognize an independent cause of action for alleged violations of the Maryland Personal Information Protection Act ("MPIPA").  Rather, to obtain relief based on an alleged violation of the MPIPA, Plaintiff must be able to state a claim under the Maryland Consumer Protection Act ("MCPA").  Md. Code, Com. Law § 14-3508.  As shown below, Plaintiff cannot do so.

### 3.   Plaintiff Cannot Plead A Statutory Claim Under The Maryland Consumer Protection Act

Plaintiff cannot state an MCPA claim, whether the claim is predicated on an alleged violation of the MPIPA or otherwise:

*First*, Plaintiff cannot show an underlying violation of the MPIPA.  Under the MPIPA, Under Armour had up to 45 days to notify Plaintiff of the data breach.  Md. Code, Com. Law § 14-3504.  It did so.  Plaintiff alleges Under Armour discovered the breach on March 25, 2018.  Compl. ¶¶ 1, 15.  Under Armour, in turn, disclosed the breach within four days of that discovery—on March 29, 2018.[7]  Because Under Armour notified Plaintiff of the data breach well within 45 days of its discovery, Plaintiff cannot establish a violation of the MPIPA.

*Second*, Plaintiff cannot show fraud under the MCPA.  Her vague allegations fail to establish any fraudulent representations or omissions on the part of Under Armour with respect to the security of Plaintiff's information.  Compl. ¶¶ 73–74.  To the contrary, in plain English, Under Armour informed Plaintiff that it "cannot

---

[7] *See* http://investor.underarmour.com/releasedetail.cfm?ReleaseID=1062368; https://www.cnbc.com/2018/03/29/under-armour-stock-falls-after-company-admits-data-breach.html; https://www.washingtonpost.com/news/the-switch/wp/2018/03/29/under-armour-announces-data-breach-affecting-150-million-myfitnesspal-app-accounts/?noredirect=on&utm_term=.abea48e00109; http://fortune.com/2018/03/29/myfitnesspal-password-under-armour-data-breach/.

16

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

guarantee that unauthorized third parties will not be able to defeat our security measures." C. Peters Decl. ¶ 4, Exh. A (Terms & Conditions) § 1 at 7.  The Terms and Conditions clearly disclaim any warranties, stating that users must "expressly acknowledge and agree that use of the Services is at your sole risk." *Id.* § 12 at 27.  Under Armour further states that "[w]e are building the best Services we can for you but we can't promise they will be perfect.  We're not liable for various things that could go wrong as a result of your use of the Services."  *Id.* § 13 at 27.  In the presence of such clear admonitions, Plaintiff cannot possibly show fraud by virtue of the fact that "unauthorized third parties [were] able to defeat [Under Armour's] security measures."  *Id.* § 1 at 7; *see In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 968 (S.D. Cal. 2012) ("no reasonable consumer could have been deceived" in light of admonitory language in agreement regarding quality of data security).

Even still, Plaintiff has not and cannot show adequate reliance or resulting injury, both of which are required under the MCPA.  *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 255 (D. Md. 2013), *aff'd*, 582 F. App'x 246 (4th Cir. 2014) ("[A] private party bringing an action under the MCPA must show that he or she has 'suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the [ ] misrepresentation.'") (quoting *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)).

The MCPA "requires that actual 'injury or loss' be sustained by a consumer *before* recovery of damages is permitted in a private cause of action."  *Citaramanis v. Hallowell*, 613 A.2d 964, 969 (Md. 1992) (emphasis added).  That "injury or loss," in turn, "must be objectively identifiable."  *Lloyd*, 916 A.2d at 277.  Thus, to state a claim under the MCPA, Plaintiff must plead facts showing she "suffered an identifiable loss, measured by the amount [she] spent or lost as a result of . . . her reliance on [Under Armour's] misrepresentations."  *Id.*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

17

Plaintiff falls far short of that standard.  She has not pled any cognizable injury, much less one that is "objectively identifiable."  Indeed, Plaintiff admits as much, primarily claiming a *future* "increased risk of harm from identity theft and identity fraud."  Compl. ¶ 31.  Future damages, however, cannot be "actual 'injury or loss'" under the MCPA, which must "be sustained by a consumer *before* recovery of damages is permitted in a private cause of action."  *Citaramanis*, 613 A.2d at 969 (emphasis added).

Plaintiff elsewhere suggests putative class members will suffer "economic damages and other actual harm" in the form of unidentified "out-of-pocket expenses," costs for "credit reporting services," and "fraudulent credit and debit card charges." Compl. ¶¶ 28, 32.  Plaintiff, however, does not claim she personally incurred such expenses.  As a matter of law, Plaintiff cannot borrow alleged harms to absent putative class members to establish her own claims.  *See, e.g., Giroux v. Essex Prop. Trust, Inc.*, 2017 WL 1549477, at *2 (N.D. Cal. May 1, 2017) (dismissal proper where plaintiff "combined allegations describing the harm she has suffered with the harm the larger putative class has suffered").  In the end, any consumer protection claim brought under Maryland law would fail on multiple fronts, and would and should be dismissed.

### D.    Plaintiff's Contract Claim Fails

Plaintiff's contract claim fails even under a generous reading of Federal Rule of Civil Procedure 8(a).  "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'"  *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012) (quoting *Cont'l Masonry Co. v. Verdel Constr. Co.*, 369 A.2d 566, 569 (Md. 1977)).  And when "consider[ing] the sufficiency of the plaintiff's allegations, [courts] construe any ambiguity in the complaint against the pleader."  *Id.*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

18

As stated above, Under Armour never promised it could "guarantee that unauthorized third parties will not be able to defeat our security measures." C. Peters Decl. ¶ 4, Exh. A (Terms & Conditions) § 1 at 7.  Rather, Under Armour affirmed that it could do no such thing, specifically stating that use of the Services was at users' "sole risk," the Services could not "be perfect," and Under Armour would not be liable for the "various things that could go wrong" as a result of using the Services. *Id.* §§ 12–13 at 25.  Under Armour expressly disclaimed any alleged promises of complete security when it informed Plaintiff that MyFitnessPal would be provided on an "as is" and "as available" "with all faults basis."  *Id.* § 12 at 27.

Notwithstanding the plain language of the Terms and Conditions, Plaintiff apparently claims Under Armour vaguely "agreed to safeguard and protect [Plaintiff's] information and to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised."  Compl. ¶ 42.  Plaintiff, however, fails to allege *how*, if at all, Under Armour failed to do those things.  Plaintiff seems to suggest that the fact that Under Armour's network was breached constitutes a *per se* breach of the alleged "agreement" between Under Armour and Plaintiff.  As stated above, however, that is precisely what Under Armour explained it could not and would not do—guarantee perfect network security.  And even if there was an agreement to timely notify Plaintiff of a breach—a promise that is inconsistent with the supposed promise of perfect security—Under Armour did so by providing notice within four days.  Under Armour did not break any enforceable promises, and, on that basis alone, Plaintiff has not and cannot state a claim for breach of contract.

On top of those deficiencies, Plaintiff cannot show damages, as she must. *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) ("Under Maryland law, the elements of a claim for breach of contract are contractual obligation, breach, and *damages*.") (quotations omitted) (emphasis added).  Under the Terms and Conditions, Plaintiff agreed Under Armour would not be liable to her for, among other things:  (1) "any indirect, incidental, special, reliance, exemplary,

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

19

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  punitive, or consequential damages of any kind whatsoever;" and (2) "loss of profits,

2  revenue, data, use, goodwill, or other intangible losses."  C. Peters Decl. ¶ 4, Exh. A

3  (Terms & Conditions) § 13 at 27–28.  Such limitation-of-liability provisions are "valid

4  and enforceable" "under Maryland law," and Plaintiff's agreement to the same bars

5  her contract claim.  *Nixon Unif. Serv., Inc. v. Am. Directory Serv. Agency, Inc.*, 693 F.

6  Supp. 367, 368 (D. Md. 1988).

7       As is evident from the Complaint, Plaintiff pleads no damages at all.  Moreover,

8  all of Plaintiff's alleged speculative future damages fall within the ambit of those two

9  provisions.  This is because, at best, Plaintiff claims she may or will suffer future

10  damages that are consequential to the data breach.  *See, e.g.*, Compl. ¶ 31 (alleging

11  future "increased risk of harm" and efforts to mitigate that future risk).  And to the

12  extent Plaintiff claims losses related to the exposure of her information—again, only

13  username, email address and hashed password—those "intangible losses" relating to

14  "data" also are barred.  *See, e.g.*, *id.* ¶ 32.  Because the Terms and Conditions

15  expressly preclude the relief sought by Plaintiff, she cannot establish a prima facie

16  element of her contract claim—damages.

17      **E.**    **Plaintiff's Negligence Claims Fail Under The Economic Loss Rule**

18          **And For Additional Independent Reasons**

19       As an initial matter, Plaintiff's eighth cause of action for negligence *per se* fails

20  because "Maryland does not recognize negligence *per se* as a cause of action."

21  *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 823 n.7 (D. Md.

22  2015).  Moreover, as stated above, Plaintiff cannot show a violation of any applicable

23  Maryland statutes, given Under Armour's full compliance with the MPIPA.

24       As to Plaintiff's negligence theories generally, Maryland follows the "economic

25  loss rule," under which "[t]ort liability is limited to situations in which the negligence

26  causes physical harm to person or property . . . Generally, plaintiffs cannot recover in

27  tort for . . . purely economic losses.  Such losses are often the result of some breach of

28  contract and ordinarily should be recovered in contract actions."  *Pulte Home Corp. v.*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1 *Parex, Inc.*, 923 A.2d 971, 1002 (Md. 2007) (internal quotations and citations

2 omitted); *see also Lawyers Title Ins. Corp. v. Rex Title Corp.*, 282 F.3d 292, 293 (4th

3 Cir. 2002) ("In general . . . Maryland does not recognize a cause of action for

4 negligence arising solely from a contractual relationship between two parties.").

5 Here, Plaintiff does not allege any personal injury or property damage resulting

6 from the breach.  There are no allegations whatsoever of any alleged injuries

7 "accompanied by some form of physical harm (*i.e.*, personal injury or property

8 damage)."  *Sony*, 903 F. Supp. 2d at 961; *see also Dugas v. Starwood Hotels &*

9 *Resorts Worldwide, Inc.*, 2016 WL 6523428, at \*12 (S.D. Cal. Nov. 3, 2016).

10 Because Plaintiff's negligence and negligence *per se* claims seek economic losses

11 only, those claims should be dismissed with prejudice under the economic loss rule.

12 Even if Plaintiff could overcome the economic loss rule (and she cannot),

13 Plaintiff's "bare-bones form of pleading is insufficient under the governing *Twombly-*

14 *Iqbal* standard because it merely recites the elements of a cause of action for

15 negligence."  *Dynport Vaccine Co. LLC v. Lonza Biologics, Inc.*, 2015 WL 2036510,

16 at \*4 (D. Md. Apr. 30, 2015).  Plaintiff's allegations do not describe the source or

17 contours of any alleged duties owed to her by Under Armour—much less how Under

18 Armour breached them.  What "security systems" did Under Armour allegedly fail to

19 employ, and what is the source and scope of that duty?  Compl. ¶ 49.  What

20 "processes" did Under Armour have a "duty to implement," and what is the source

21 and scope of that duty?  *Id.* ¶ 50.  Under Armour notified Plaintiff of the breach within

22 four days of discovery.  How was that "untimely," and what is the source of the duty

23 that specifies the same?  *Id.* ¶ 51.  How did Under Armor "fail[] to provide adequate

24 supervision and oversight," and what is the source and scope of the duty that specifies

25 the same?  Questions abound.  In the end, it is plain that Plaintiff simply equates the

26 fact of the data breach with negligence, and that will not do, especially in a world

27 where all companies suffer daily cyberattacks, and the world's largest companies, as

28 well as the United States government (including the NSA), suffer data intrusions at

21

the hands of these sophisticated criminal hackers.  "Because [Plaintiff]'s complaint does not allege factual content from which the Court can infer a tort duty of care or a breach," her negligence claims fail.  *Dynport*, 2015 WL 2036510, at *4.[8]

**F.    Plaintiff's Implied Covenant Claim Fails**

Plaintiff's implied covenant claim fails for the simple reason that "there is no independent cause of action at law in Maryland for breach of the implied covenant of good faith and fair dealing."  *Mount Vernon Properties, LLC v. Branch Banking And Tr. Co.*, 907 A.2d 373, 381 (Md. 2006).  Because "no such action at law exists in Maryland," Plaintiff's implied covenant claim should be dismissed with prejudice.  *Id.*

**VI.    CONCLUSION**

For these reasons, the Court can and should order Plaintiff to arbitrate her claims on an individual basis and dismiss this lawsuit in its entirety—or, at the very least, stay it during the pendency of the arbitration.  Alternatively, should the Court decline to enforce Plaintiff's Arbitration Agreement (and it should not), the Court should dismiss Plaintiff's complaint in its entirety under Rule 12(b)(6).

DATED:  May 29, 2018                      **HUNTON ANDREWS KURTH LLP**

By:   /s/ Ann Marie Mortimer
Ann Marie Mortimer
Attorneys for Defendant
UNDER ARMOUR, INC.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

---

[8] To state a claim for negligence, a plaintiff must also allege "actual injury or loss."  *Remsburg v. Montgomery*, 831 A.2d 18, 26 (Md. 2003).  Plaintiff here fails to do so for the reasons stated above.