1  Ann Marie Mortimer (State Bar No. 169077)
2  amortimer@HuntonAK.com
   Jason J. Kim (State Bar No. 221476)
3  kimj@HuntonAK.com
   **HUNTON ANDREWS KURTH LLP**
4  550 South Hope Street, Suite 2000
5  Los Angeles, California 90071-2627
   Telephone: (213) 532-2000
6  Facsimile: (213) 532-2020
7
8  Attorneys for Defendant
   UNDER ARMOUR, INC.
9

10           **UNITED STATES DISTRICT COURT**

11           **CENTRAL DISTRICT OF CALIFORNIA**

12

13  REBECCA ELIZABETH MURRAY,          CASE NO.:  2:18-CV-04032 FMO (Ex)
    individually and on behalf of all others
14  similarly situated,                **DEFENDANT UNDER ARMOUR,**
                                       **INC.'S REPLY IN SUPPORT OF**
15                                     **MOTION TO COMPEL**
            Plaintiff,                 **ARBITRATION AND TO DISMISS**
16                                     **OR STAY LITIGATION**
17       v.
                                       [*Supplemental Declaration of Christopher*
18  UNDER ARMOUR, INC., a Maryland     *Peters and Declaration of Jason J. Kim*
19  corporation; and DOES 1 through 100, *filed concurrently herewith*]
    inclusive,
20                                     DATE:   July 12, 2018
            Defendants.               TIME:   10:00 a.m.
21                                     ROOM:  6D
22
23                                     Complaint Filed:   April 4, 2018
24
25
26
27
28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

### <u>TABLE OF CONTENTS</u>

2

Page

3

I.      INTRODUCTION .........................................................................................1

4

II.     PLAINTIFF CONFIRMS SHE AGREED TO ARBITRATE ..........................2

5

        A.      Plaintiff Admits She Agreed To Arbitration When She Registered,
                And Documentary Proof Shows She Agreed Again In 2016 ..................3

6

        A.      Plaintiff Fails To Overcome Her Agreement To Arbitrate Gateway
                Arbitrability Questions...........................................................................5

7

8

        B.      The Delegation Provision Is Not Unconscionable ..............................7

9

        C.      The Arbitrator—Not The Court—Must Decide Plaintiff's
                Remaining Challenges To The Terms ..................................................9

10

        D.      Even If The Court Considered Plaintiff's Challenges To The
                Arbitration Agreement As A Whole, They Fail....................................9

11

12

        E.      Even If The Arbitration Provision Contained Unenforceable
                Terms, The Court Should Sever Them And Enforce The
                Remainder ............................................................................................11

13

14

III.    PLAINTIFF FAILS TO STATE VIABLE CLAIMS IN ANY EVENT ...........11

15

        A.      Plaintiff Fails To Allege Any Cognizable Damages.............................11

16

        B.      Plaintiff Fails To Salvage Her California Constitution And
                Statutory Claims ..................................................................................12

17

18

        C.      Plaintiff Fails To Salvage Her Invasion Of Privacy Claim ...................15

19

        D.      Plaintiff Fails To Salvage Her Contract Claim....................................15

20

        E.      Plaintiff Fails To Salvage Her Negligence Claim.................................17

21

        F.      Plaintiff Fails To Salvage Her Implied Covenant Claim .......................20

22

        G.      Plaintiff Fails To Salvage Her Claim For "Violation Of State Data
                Breach Acts".........................................................................................20

23

24

IV.     CONCLUSION .........................................................................................21

25

26

27

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

REPLY IN SUPPORT OF MOTION
TO COMPEL ARBITRATION AND TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                   Page

*Antman v. Uber Techs., Inc.*,
   2018 WL 2151231 (N.D. Cal. May 10, 2018) ....................................................12

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011).............................................................................................7

*Belton v. Comcast Cable Holdings, LLC*,
   151 Cal. App. 4th 1224 (2007) ...........................................................................8

*Brack v. Omni Loan Co.*,
   164 Cal. App. 4th 1312 (2008) .........................................................................13

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) .......................................................................5, 6

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006).........................................................................................10

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ....................................................................................15

*Coll. of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc.*,
   752 A.2d 265 (Md. App. 2000) ........................................................................11

*Corona v. Sony Pictures Entm't, Inc.*,
   2015 WL 3916744 (C.D. Cal. June 15, 2015) ..................................................21

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
   2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ....................................................20

*Dynport Vaccine Co. LLC v. Lonza Biologics, Inc.*,
   2015 WL 2036510 (D. Md. Apr. 30, 2015) .......................................................18

*Elsayed v. Maserati N. Am., Inc.*,
   215 F. Supp. 3d 949 (C.D. Cal. 2016) .............................................................19

*Emery v. Visa Int'l Serv. Ass'n*,
   95 Cal. App. 4th 952 (2002)............................................................................15

*Esquer v. Educ. Mgmt. Corp.*,
   292 F. Supp. 3d 1005 (S.D. Cal. 2017) .........................................................6, 7

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

ii

*In re Firearm Cases*,
　126 Cal. App. 4th 959 (2005)...........................................................................15

*Graham v. Bank of Am., N.A.*,
　226 Cal. App. 4th 594 (2014)...........................................................................15

*Guadagno v. E\*Trade Bank*,
　592 F. Supp. 2d 1263 (C.D. Cal. 2008) ..........................................................13

*Jacques v. First Nat'l Bank of Md.*,
　515 A.2d 756 (Md. 1986)....................................................................1, 7, 9, 18

*James v. Comcast Corp.*,
　2016 WL 4269898 (N.D. Cal. Aug. 15, 2016) ..................................................7

*Jeffries v. Boston Sci. Corp.*,
　2017 WL 2645723 (D. Md. June 20, 2017)......................................................17

*Kissel v. Code 42 Software, Inc.*,
　2016 WL 7647691 (C.D. Cal. Apr. 14, 2016) ..................................................13

*Lawyers Title Ins. Corp. v. Rex Title Corp.*,
　282 F.3d 292 (4th Cir. 2002)......................................................................18, 19

*McCabe v. Dell, Inc.*,
　2007 WL 1434972 (C.D. Cal. Apr. 12, 2007) ...................................................7

*McKinney v. Fulton Bank*,
　776 F. Supp. 2d 97 (D. Md. 2010) ..................................................................19

*Michael v. Honest Co., Inc.*,
　2016 WL 8902574 (C.D. Cal. Dec. 6, 2016) ..................................................19

*Mohamed v. Uber Techs., Inc.*,
　848 F.3d 1201 (9th Cir. 2016).........................................................................11

*Mount Vernon Properties, LLC v. Branch Banking & Tr. Co.*,
　907 A.2d 373 (Md. App. 2006).......................................................................20

*Nevarez v. Forty Niners Football Co., LLC*,
　2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ...........................................7, 8, 9

*Ott v. Alfa-Laval Agri, Inc.*,
　31 Cal. App. 4th 1439 (1995)..........................................................................19

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

iii

*Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt., Inc.*,
  95 F. Supp. 3d 886 (D. Md. 2015) ..................................................16, 17

*Pokrass v. The DirecTV Grp., Inc.*,
  2008 WL 2897084 (C.D. Cal. July 14, 2008) ..........................................7

*Razuki v. Caliber Home Loans, Inc.*,
  2018 WL 2761818 (S.D. Cal. June 8, 2018).....................................*passim*

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010)...............................................................7, 10

*Ridenhour v. UMG Recordings, Inc.*,
  2012 WL 463960 (N.D. Cal. Feb. 13, 2012) .........................................13

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................14

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................20

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016).................................................9, 10, 11

*U.S. Bank. N.A. v. Miller*,
  2013 WL 12183652 (C.D. Cal. May 8, 2013) .......................................20

*In re Yahoo! Inc. Customer Data Security Breach Litigation*,
  2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .................................11, 13

*In re Zappos.com, Inc*,
  888 F.3d 1020 (9th Cir. 2018)................................................11, 12

**Statutes**

Cal. Bus. & Prof. Code § 17200...............................................................13

Cal. Civ. Code § 1798.80, *et seq.* .......................................................*passim*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff's primary argument against arbitration is her claim that Under Armour, Inc. ("Under Armour") "does not and cannot point to any evidence of mutual assent to" arbitration.  Opp. at 8:6-7.  Under Armour, however, points to Plaintiff's own admissions:

*First*, Under Armour points to Plaintiff's own opposition and supporting declaration, wherein she admits on the very first page that she "*agreed to [Under Armour's] terms of service in May, 2012*" (the "2012 Terms").  Opp. at 5:6-8.  The 2012 Terms contain the same arbitration provision Plaintiff sought to avoid in the 2013 Terms submitted with Under Armour's moving papers.[1]  Because, in Plaintiff's own words, "it is undisputed" that she "agreed to" the 2012 Terms, including the arbitration provision therein, she should be compelled to arbitrate.

*Second*, Under Armour points to documentary proof that establishes Plaintiff's declaration is incorrect.  In her declaration, Plaintiff claims for the first time she registered for MyFitnessPal in May of 2012 under the username "Beccula."  Under Armour's records reveal that "Beccula," now established to be Plaintiff, accepted Under Armour's 2016 Terms on May 26, 2016, shortly after they were rolled out to existing users.  Suppl. Peters Decl., Exhs. B & C (Screenshots).  Now that Plaintiff has supplied her username, there is no dispute she agreed to arbitrate.

---

[1] At the time Under Armour filed its moving papers, it could not ascertain whether or when Plaintiff registered for MyFitnessPal given the sparsity of details regarding her account in the complaint, as well as the commonality of her name.  Because Plaintiff admitted her assent to Under Armour's 2016 Privacy Policy in her complaint (Compl. ¶ 42), which was rolled out in conjunction with the 2016 Terms, Under Armour submitted the 2016 Terms, as well as the predecessor 2013 Terms.  Plaintiff, however, now has admitted she registered for MyFitnessPal in 2012 and agreed to the 2012 Terms, rendering these issues moot.  Plaintiff also now has supplied her username, which enabled Under Armour to pinpoint the precise date she assented to the 2016 Terms—on May 26, 2016.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

*Third*, Under Armour points to Plaintiff's own judicial admission in her complaint that she had notice of and assented to the 2016 Privacy Policy that accompanied the 2016 Terms.  Compl. ¶ 42.  Plaintiff quotes directly from the 2016 Privacy Policy, claiming she agreed to its terms in connection with her first cause of action.  *Id.*  Plaintiff cannot claim Under Armour gave her sufficient notice of its 2016 Privacy Policy, but then claim it provided insufficient notice of its 2016 Terms.  Plaintiff cannot pick and choose between the two to suit her litigation whims.  She is bound by both.

Taken separately or together, Plaintiff's own admissions and irrefutable documentary evidence prove her agreement to arbitrate this dispute, including threshold arbitrability questions.  But even if this Court did tackle the merits of Plaintiff's claims (and it should not), they fail nonetheless.  In the end, Plaintiff has pled simply that Under Armour fell victim to a data breach that allegedly compromised an email address she no longer uses,[2] a username she now has publicly disclosed in a court filing, and a hashed[3] password to an account that contained no information that could be used to commit identity theft.  Again, however, these issues are for an arbitrator to decide.

Because "it is undisputed" that Plaintiff agreed in 2012 to arbitrate this dispute, and now irrefutable she agreed again in 2016, her lawsuit should be dismissed in its entirety and sent to arbitration where it belongs.

## II.   <u>PLAINTIFF CONFIRMS SHE AGREED TO ARBITRATE</u>

While Under Armour has proven Plaintiff assented to the 2016 Terms and the 2012 Terms, that distinction makes no difference in the end.  Under either version, Plaintiff agreed to arbitrate, including threshold arbitrability questions.

_____

[2] Murray Decl. ¶ 4.

[3] "Hashing" converts passwords into unreadable strings of characters that are designed to be impossible to convert back.

2

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**A.   <u>Plaintiff Admits She Agreed To Arbitration When She Registered,</u>**
**<u>And Documentary Proof Shows She Agreed Again In 2016</u>**

On the very first page of her opposition papers, Plaintiff admits "*it is undisputed that Murray* opened her account with Defendant and *agreed to its terms of service in May, 2012.*"  Opp. at 5:6-8 (emphasis added).  Plaintiff's primary argument against arbitration is her claim that, unlike the 2013 or 2016 Terms, the 2012 Terms to which she agreed did not include an arbitration provision.  But they did:

**(a) Requirement of Arbitration.**

> You agree that any dispute, of any nature whatsoever, between You and MyFitnessPal arising out of or relating to the Website, Services, or this Agreement, shall be decided by neutral, binding arbitration before a representative of JAMS in San Francisco, California (unless You and MyFitnessPal mutually agree to a different arbitrator), who shall render an award in accordance with the substantive laws of California and JAMS' Streamlined Arbitration Rules & Procedures.  A final judgment or award by the arbitrator may then be duly entered and recorded by the prevailing party in the appropriate court as final judgment.  The arbitrator shall award costs (including, without limitation, the JAMS' fee and reasonable attorney's fees) to the prevailing party.

Supp. Peters Decl., Exh. A (2012 Terms) ¶ 27(a).  Plaintiff's entire argument fails by her own admission, and she should be compelled to arbitrate under the very Terms to which she admittedly agreed.[4]

On top of that, documentary proof reveals that Plaintiff's declaration is inaccurate.  Plaintiff claims in her declaration that she did not assent to the 2016

---

[4] And that is on top of Plaintiff's prior judicial admission that she had notice of and assented to the 2016 Privacy Policy that was part of the 2016 Terms.  Compl. ¶ 42.

Terms.  Murray Decl. ¶ 4.  But she did.  Plaintiff avers that she created an account under the username "Beccula."  *Id.* ¶ 2, Exh. 1.

Under Armour maintains records of when individuals accepted the 2016 Terms.  Suppl. Peters Decl. ¶ 4.  However, Under Armour could not determine which account belonged to Plaintiff when it filed its moving papers, as it had insufficient information to narrow down its search.  *Id.* ¶ 5.  Following the submission of Plaintiff's declaration, however, Under Armour searched its records for "Beccula," identified her User ID number, and cross-referenced that User ID number with records of users who accepted Under Armour's 2016 Terms.  *Id.*  And that search revealed that Plaintiff accepted Under Armour's 2016 Terms on May 26, 2016, shortly after they were rolled out to existing users on March 1, 2016.  *Id.* ¶ 6; *see also id.*, Exhs. B & C (Screenshots).

In particular, the 2016 Terms submitted with the moving papers are identified as version "2" in Under Armour's records.  Suppl. Peters Decl. ¶ 6.  Under Armour's records show Plaintiff accepted version "2" of Under Armour's Terms on May 26, 2016, which is reflected in the "updated_at" field of Exhibit C to Mr. Peters' Supplemental Declaration.  *Id.*; *see also id.*, Exhs. B & C (Screenshots).  A date would not have been generated in this field unless Plaintiff took an affirmative action to accept the 2016 Terms.  *Id.*

The process by which existing MyFitnessPal users accepted the 2016 Terms is simple.  When Under Armour rolled them out, all existing users, including Plaintiff, were prompted to accept—and required to accept—the 2016 Terms when attempting to access the MyFitnessPal website and application.  Supp. Peters Decl. ¶ 7, Exhs. D, E, & F (Screenshots).  *Plaintiff, therefore, could not have accessed the MyFitnessPal website or application without accepting the 2016 Terms.  Id.*  And that happened on May 26, 2016, as reflected in the "updated_at" field of Exhibit C to Mr. Peters' Supplemental Declaration.  *Id.* ¶ 6; *see also id.*, Exh. C (Screenshot).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

4

Plaintiff admittedly agreed to arbitrate in 2012, and irrefutable proof shows she agreed again in 2016.  Plaintiff cannot escape her agreement to arbitrate, and she should be compelled to do so.

**A.    Plaintiff Fails To Overcome Her Agreement To Arbitrate Gateway Arbitrability Questions**

Plaintiff seeks to avoid her agreement to arbitrate arbitrability by claiming the parties' incorporation of JAMS or AAA Rules does not constitute a "clear and unmistakable" intent to arbitrate arbitrability.  Plaintiff is wrong.

The 2012 Terms, to which Plaintiff admittedly agreed, incorporate JAMS' Streamlined Arbitration Rules and Procedures.[5]  Rule 8(b), in turn, provides:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.  **The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.**

(Emphasis added.)  And the 2016 Terms incorporate the AAA Rules, which, as demonstrated in Under Armour's opening brief, vest the arbitrator with the "power to rule on his or her own jurisdiction, including any objections with respect to the . . . arbitrability of any claim or counterclaim."[6]

As set forth in the moving papers, the Ninth Circuit has held that a "clear and unmistakable" delegation of gateway arbitrability issues occurs when parties incorporate such rules.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[W]e hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.").

---

[5] Available at:  https://www.jamsadr.com/rules-streamlined-arbitration/.  AAA has a similar rule, as shown in the moving papers.  Motion, at Section IV(b).

[6] AAA Consumer Arbitration Rule 1(a)(3), available at:  https://www.adr.org/Rules.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

5

Plaintiff claims the "Ninth Circuit explicitly limited its holding in *Brenan* [sic] *v Opus Bank* (2015) 796 F.3d 1125 to the facts of the case, which involved an arbitration agreement 'between sophisticated parties.'" Opp. at 10:8. Plaintiff, however, ignores the Ninth Circuit's clear directive that *Brennan* "should not be interpreted to require that the contracting parties be sophisticated or that the contract be 'commercial.'" *Brennan*, 796 F.3d at 1130. Indeed, the Ninth Circuit stressed that *Brennan* "does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts," noting the "vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts." *Id.* at 1130-31. Contrary to Plaintiff's position here, "*Brennan* does not compel a court to inquire into a party's sophistication to find clear and unmistakable intent." *Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d 1005, 1012 (S.D. Cal. 2017). Plaintiff's admitted agreement to the 2012 Terms, which incorporate JAMS' rules, and her acceptance of the 2016 Terms, which incorporate AAA's rules, is decisive.[7] She clearly and unmistakably agreed to arbitrate arbitrability.

Separate and apart from the parties' incorporation of JAMS' rules into the 2012 Terms, the 2012 Terms themselves delegate arbitrability issues to the arbitrator. In plain English, the 2012 Terms state that "*any dispute*, of any nature whatsoever, between You and MyFitnessPal *arising out of or relating to* the Website, Services, or *this Agreement*, shall be decided by neutral, binding arbitration." Supp. Peters Decl., Exh. A (2012 Terms) ¶ 27(a) (emphasis added). On its own, that is sufficient to show

---

[7] Under Armour acknowledges some courts have limited *Brennan* to cases involving sophisticated parties. But the better and modern view holds that "incorporation of an arbitrator's procedural rules into an arbitration agreement constitutes a clear delegation of arbitrability without regard to a party's sophistication." *Esquer*, 292 F. Supp. 3d at 1012 (collecting cases).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

the parties "clearly and unmistakably delegated the question of arbitrability." *Esquer*, 292 F. Supp. 3d at 1013; *see also Nevarez v. Forty Niners Football Co., LLC*, 2017 WL 3492110, at *11 (N.D. Cal. Aug. 15, 2017) (finding clear and unmistakable intent to arbitrate arbitrability where arbitrator vested with authority "to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation for this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable"); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010) (same). By all counts and under any measure, Plaintiff clearly and unmistakably agreed to arbitrate arbitrability.

## B.   The Delegation Provision Is Not Unconscionable

Plaintiff also seeks to avoid her agreement to arbitrate arbitrability "because it is unconscionable." Opp. at 11:1. It is not.

*First*, Plaintiff claims the delegation provision is procedurally unconscionable because there was "no opportunity to bargain over its terms." Opp. at 11:14-15. Plaintiff's outdated argument, however, no longer holds water post-*Concepcion*, wherein the United States Supreme Court noted that the "times in which consumer contracts were anything other than adhesive are long past." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346-47 (2011). And that holds particularly true here with respect to MyFitnessPal, a nonessential recreational website and application. "[C]ontracts for nonessential recreational activities cannot be procedurally unconscionable" because the "consumer always has the option of simply foregoing the activity." *Pokrass v. The DirecTV Grp., Inc.*, 2008 WL 2897084, at *7 (C.D. Cal. July 14, 2008) (citing cases).[8] MyFitnessPal is hardly a life necessity, and Plaintiff's opposition fails to show otherwise.

---

[8] *See also James v. Comcast Corp.*, 2016 WL 4269898, at *4 (N.D. Cal. Aug. 15, 2016) (internet services are nonessential and arbitration provision in contract was not procedurally unconscionable); *McCabe v. Dell, Inc.*, 2007 WL 1434972, at *3 (C.D. Cal. Apr. 12, 2007) (desktop computer is "consumer non-essential good"); *Pokrass*,

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

7

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

But even if the Court found the "delegation provision is contained within a contract of adhesion," at most, "this creates only a 'low degree of procedural unconscionability.'" *Nevarez*, 2017 WL 3492110, at *11. And it certainly provides no basis to invalidate the delegation provision. *Id.*

*Second*, Plaintiff claims the delegation provision is procedurally unconscionable because it is "hidden on page 28 of their terms and [sic] service," and Plaintiff "never received notice of the provision." Opp. at 11:23-25. But that claim is now moot in light of Plaintiff's admission that she "agreed to [Under Armour's] terms of service in May, 2012." Opp. at 5:7-8. By that admission, Plaintiff acknowledges having notice of the 2012 Terms when she registered, and those 2012 Terms prominently contained the delegation provision in a standalone paragraph highlighted by a bolded heading entitled, "Requirement of Arbitration." Supp. Peters Decl., Exh. A (2012 Terms) ¶ 27(a). That bolded heading appeared on page six of a seven-page document. *Id.* "District courts have consistently rejected procedural unconscionability arguments in similar circumstances." *Nevarez*, 2017 WL 3492110, at *11. And this Court similarly should reject that argument here.

*Third*, Plaintiff claims the delegation provision is substantively unconscionable because it would require her to "travel to Maryland." Opp. at 12:5. As an initial matter, "because the degree of procedural unconscionability is low," the Court should "enforce the delegation provision 'unless the degree of substantive unconscionability is high.'" *Nevarez*, 2017 WL 3492110, at *12. And here, Plaintiff cannot remotely make that showing. Plaintiff's complaints about "travel to Maryland" are not compelling. As the Ninth Circuit has held: "To the extent the state appellate courts

---

2008 WL 2897084, at *7 (satellite-delivered television a nonessential recreational activity because plaintiff "could have chosen to forego television altogether"); *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1246 (2007) ("Listening to music or FM radio is also a nonessential recreational activity that plaintiffs could simply have forgone if they disliked the requirement [in the contract].").

8

1   apply different standards in arbitration and nonarbitration contexts, upholding forum

2   selection clauses in the nonarbitration context (even in adhesion contracts) without

3   considering expense and inconvenience, while striking them down in the arbitration

4   context due to expense and inconvenience, these cases are not binding on us as

5   California law." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1029 (9th Cir. 2016).

6   Plaintiff submitted no evidence, only her bare assertion, that she could not afford to

7   travel to Maryland to arbitrate.  Given that the 2016 Terms permit Plaintiff to

8   participate in the arbitration from California, Plaintiff cannot show unconscionability.

9        Moreover, to the extent the 2012 Terms are deemed the applicable Term for

10  Plaintiff, her argument is irrelevant.  Those Terms, to which she admittedly agreed,

11  designate California as the place of arbitration.

12  **C.**     **The Arbitrator—Not The Court—Must Decide Plaintiff's Remaining**

13           **Challenges To The Terms**

14       In light of Plaintiff's admitted agreement to the delegation provision in the 2012

15  Terms, and her irrefutable agreement to the 2016 Terms, the "Court need not—and

16  cannot—reach Plaintiffs' remaining arguments regarding the unconscionability of the

17  arbitration clause as a whole, which the parties have clearly and unmistakably

18  delegated to the arbitrator in the first instance." *Nevarez*, 2017 WL 3492110, at *14.

19  They should be left to the arbitrator to decide.

20  **D.**     **Even If The Court Considered Plaintiff's Challenges To The**

21           **Arbitration Agreement As A Whole, They Fail**

22       Even if the Court considered Plaintiff's remaining attempts to avoid her

23  agreement to arbitrate (and it should not), those arguments are moot and otherwise fail

24  under settled Ninth Circuit precedent:

25       *First*, Plaintiff claims the arbitration agreement is unenforceable because Under

26  Armour allegedly "is seeking to unilaterally modify its terms of service to include a

27  waiver of the right to a jury trial without notice at a later period"—*i.e.*, in 2013 and

28

9

2016.  Opp. at 9:7-8.  That argument is premised on Plaintiff's incorrect assertion that the 2012 Terms, to which she admits she agreed, did not include an arbitration provision.  Opp. at 5:6-8.  It must therefore be rejected.[9]

*Second*, Plaintiff claims the FAA precludes enforcement of a contract that permits a party to unilaterally modify its terms.  As an initial matter, even if the 2012 Terms did not contain a delegation provision (and they do), the arbitrator must decide this issue because it challenges the 2012 Terms as a whole—the modification-of-terms provision applies to the entire agreement, not just the arbitration clause.  Supp. Peters Decl., Exh. A (2012 Terms) ¶ 3; *see also, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-446 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

But even if the Court considered this argument (and it should not), the Ninth Circuit squarely has rejected it—unilateral modification provisions do not render an arbitration provision unenforceable.  *See Tompkins*, 840 F.3d at 1032.  And this Court has agreed.  Kim Decl., Exh. A (*Serna*), at 13-14.  Moreover, it is now beyond dispute that Plaintiff agreed to arbitrate again in 2016 in any event.

*Third*, Plaintiff claims the "agreement has a one year statute of limitations for all claims," which she characterizes as substantively unconscionable.  Opp. at 12:20-13:2.  Once again, even if the Court could decide this issue (and it cannot),[10] the Ninth Circuit has rejected it.  The 2012 Terms are governed by California law.  Supp. Peters Decl., Exh. A (2012 Terms) ¶ 27.  And "California courts have afforded contracting parties considerable freedom to modify the length of a statute of limitations."  *Tompkins*, 840 F.3d at 1032.  Moreover, "California courts generally interpret

---

[9] Plaintiff also agreed that Under Armour could modify the Terms from time to time.  Supp. Peters Decl., Exh. A (2012 Terms) ¶ 3.

[10] Because the limitations provision appears outside the "Requirement of Arbitration" provision, it is beyond the purview of this Court.  *Rent-A-Ctr.*, 561 U.S. at 70-71.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   contractual statute of limitations as incorporating California's discovery rule, in order

2   to avoid unfair or unreasonable applications of the limitations period." *Id.* at 1033.

3   Accordingly, the statute of limitations provision does not make the arbitration

4   provision in the 2012 Terms unconscionable.[11]   And if the 2016 Terms are applied,

5   Maryland law does not preclude such provisions.  *Coll. of Notre Dame of Maryland,*

6   *Inc. v. Morabito Consultants, Inc.*, 752 A.2d 265 (Md. App. 2000).

7          **E.   Even If The Arbitration Provision Contained Unenforceable Terms,**

8              **The Court Should Sever Them And Enforce The Remainder**

9          As the Ninth Circuit has held, even if the Court deemed any provisions in the

10  arbitration agreement unenforceable, the Court should sever them and enforce the

11  remainder.  *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1213-14 (9th Cir. 2016)

12  (unenforceable waiver of private attorney general suits was severable from remainder

13  of arbitration clause).

14  **III.   PLAINTIFF FAILS TO STATE VIABLE CLAIMS IN ANY EVENT**

15         As stated above, Under Armour has proven Plaintiff assented to the 2016 Terms

16  and the 2012 Terms.  Whether Plaintiff's claims ultimately are decided under

17  Maryland law pursuant to the 2016 Terms or California law pursuant to the 2012

18  terms, the distinction matters little.  Plaintiff's claims fail under both.

19         **A.   Plaintiff Fails To Allege Any Cognizable Damages**

20         Irrespective of whether California or Maryland law applies, Plaintiff fails

21  entirely to allege cognizable damages to support any of her claims.

22         Citing *In re Yahoo! Inc. Customer Data Security Breach Litigation*, 2017 WL

23  3727318 (N.D. Cal. Aug. 30, 2017) and *In re Zappos.com, Inc*, 888 F.3d 1020 (9th

24  Cir. 2018), Plaintiff claims she suffered cognizable damages in the form of an

25  increased risk of identity theft.  Those cases, however, addressed Article III standing

26

27  —————————————
    [11] The statute of limitations provision is not even pertinent here, as Plaintiff filed this
28  lawsuit within one year in any event.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

11

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

requirements, which Under Armour did not challenge here.  Moreover, in those cases, "there were known data breaches of PII that *plausibly* risked fraud and ID theft." *Antman v. Uber Techs., Inc.*, 2018 WL 2151231, at *11 (N.D. Cal. May 10, 2018) (emphasis added).  Plaintiff pleads no such compromise of sensitive information here—there are no allegations that hackers obtained social security numbers, credit card numbers, or any other information that would enable them to commit identity theft.  At most, Plaintiff can plausibly allege the breach compromised an email address that she stopped using a long time ago (Murray Decl. ¶ 4), a username she now has publicly disclosed, and her hashed MyFitnessPal password.[12]  Plaintiff fails entirely to explain how those data elements possibly could enable a hacker to commit identity theft—*e.g.*, file a fraudulent return, open a fraudulent credit card account, etc. *Antman*, 2018 WL 2151231, at *11; *see also Razuki v. Caliber Home Loans, Inc.*, 2018 WL 2761818, at *1 (S.D. Cal. June 8, 2018) (no cognizable damages even where plaintiff claimed "his personal information was misused when someone attempted to open accounts in his name").  Because Plaintiff cannot show any cognizable damages whatsoever, each of her claims should be dismissed—whether brought under California or Maryland law.

### B.    Plaintiff Fails To Salvage Her California Constitution And Statutory Claims

As set forth in the moving papers, Plaintiff's California Constitution and statutory claims fail because Plaintiff agreed in the 2016 Terms to the application of Maryland law.

Plaintiff does not address the propriety of her California constitutional claim for invasion of privacy or her claim under California's Customer Records Act.  So those claims should be deemed abandoned.

---

[12] *See* http://investor.underarmour.com/releasedetail.cfm?releaseid=1062368.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Instead, Plaintiff focuses solely on her California statutory unfair competition claims under Section 17200 of the Business and Professions Code (the "UCL"). As an initial matter, Plaintiff does not dispute Maryland bears a "substantial relationship" to the parties; nor could she, as Under Armour is headquartered there. *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1269 (C.D. Cal. 2008) (substantial relationship and reasonable basis for Virginia choice-of-law provision because E*Trade's headquarters were there). Rather, Plaintiff cites *Brack v. Omni Loan Co.*, 164 Cal. App. 4th 1312 (2008) and *Kissel v. Code 42 Software, Inc.*, 2016 WL 7647691 (C.D. Cal. Apr. 14, 2016), arguing California has a blanket prohibition on parties' decisions to opt into the application of another state's consumer protection laws. Opp. at 15:9-14. Those cases stand for no such thing, and neither even addresses the UCL, much less engages in a comparative analysis of California and Maryland consumer protection laws. Having conceded Maryland bears a "substantial relationship" to the parties, Plaintiff had the burden to prove application of Maryland law would violate a fundamental California policy. *Ridenhour v. UMG Recordings, Inc.*, 2012 WL 463960, at *3 (N.D. Cal. Feb. 13, 2012).

Plaintiff failed entirely to address any meaningful differences between California and Maryland's consumer protection laws, and thus, she cannot possibly meet that burden.

But even if the UCL applied, Plaintiff's claims would fail nonetheless. As stated above, Plaintiff cannot show she lost any money or property sufficient to state a UCL claim. *In re Yahoo*, 2017 WL 3727318, at *22. Indeed, when purporting to address her alleged damages in her opposition, Plaintiff fails even to allege that she paid money to use MyFitnessPal. Rather, Plaintiff apparently claims damages by virtue of an alleged increased risk of identity theft. Opp. at 14:27-28. While that might suffice for Article III purposes, it does not constitute lost money or property under the UCL. *In re Yahoo*, 2017 WL 3727318, at *22 ("Plaintiffs' imminent risk of

13

*future* costs as a result of the Data Breaches, although sufficient to establish standing under the broader injury-in-fact requirements of Article III, is not sufficient to allege 'lost money or property' under the UCL.").

On top of that, Plaintiff fails to direct this Court to any substantive allegations showing "unlawful, unfair, or fraudulent" conduct. *Razuki*, 2018 WL 2761818, at *3. Plaintiff's opposition certainly does not clarify matters. To the extent Plaintiff relies on the "fraudulent" prong of the UCL, she fails to identify any fraudulent statements by Under Armour with particularity, much less show reliance thereon (including allegations that she specifically read them).[13] Nor could she, given the numerous admonitions Under Armour made with respect to data security. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 968 (S.D. Cal. 2012) ("no reasonable consumer could have been deceived" in light of admonitory language in agreement regarding quality of data security). Plaintiff does not even address the impact of those admonitory statements in her opposition papers, all of which defeat any claim of "fraudulent" conduct.

Similarly, Plaintiff fails to allege any "unlawful" conduct. At most, Under Armour fell victim to a data breach, which it promptly disclosed to the public within four days of discovery. Plaintiff's opposition fails to state how, if at all, Under Armour violated the law in doing so. Plaintiff's complaint cites California's Customer Records Act. Compl. ¶¶ 61-62. But she offers nothing more than "conclusory allegations about security, data disposal, and notification." *Razuki*, 2018 WL 2761818, at *2. That is hardly sufficient to plausibly allege a violation of the law.

Likewise, Plaintiff fails to allege any "unfair" conduct. Plaintiff had to plead facts showing Under Armour's alleged misconduct "is tethered to an[ ] underlying constitutional, statutory or regulatory provision" or that it "threatens an incipient

---

[13] This is particularly important given Plaintiff's "moving target" approach with respect to Under Armour's Terms and Privacy Policies.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  violation of an antitrust law." *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594,

2  613 (2014); *see Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163,

3  182, 185 (1999) ("tethering" required because "[c]ourts may not simply impose their

4  own notions of the day as to what is fair or unfair"). No "tethering" is pled here.

5  Plaintiff cites no "established public policy" that Under Armour violated by failing to

6  withstand a cyberattack—and the hackers' illegal conduct cannot be attributed to

7  Under Armour. *In re Firearm Cases*, 126 Cal. App. 4th 959, 985 (2005) (no liability

8  where defendants "did not control the wrongful acts [in question] or encourage others

9  to engage in questionable acts"); *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th

10  952, 964 (2002) (plaintiff could not "impose liability on VISA because it failed to stop

11  lottery merchants from improperly using its mark").

12  　　　　For those reasons, even if Plaintiff could bring a UCL claim, it would fail.

13  **C.　Plaintiff Fails To Salvage Her Invasion Of Privacy Claim**

14  　　　　Plaintiff fails entirely to address the infirmities in her invasion of privacy claim.

15  It fails under Maryland law for the reasons set forth in the moving papers, to which

16  Plaintiff provided no response whatsoever. And so too under California law. "Losing

17  personal data through insufficient security doesn't rise to the level of an egregious

18  breach of social norms underlying the protection of sensitive data like social security

19  numbers." *Razuki*, 2018 WL 2761818, at *2. Moreover, Plaintiff's allegations "don't

20  suggest the type of intentional, egregious privacy invasion contemplated" by

21  California courts. *Id.* Rather, Plaintiff alleges that Under Armour itself was a victim

22  of hackers. Having failed to plead any intentional, egregious wrongdoing on the part

23  of Under Armor, Plaintiff's invasion of privacy claim fails under the laws of Maryland

24  and California.

25  **D.　Plaintiff Fails To Salvage Her Contract Claim**

26  　　　　Plaintiff does not even address Under Armour's argument that it did not

27  "guarantee that unauthorized third parties will not be able to defeat [its] security

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   measures."  Peters Decl. ¶ 4, Exh. A (2016 Terms) § 1 at 7.  To the contrary, Under

2   Armour stated it could do no such thing—that use of MyFitnessPal was at users' "sole

3   risk," that it could not "be perfect," and that Under Armour would not be liable for the

4   "various things that could go wrong" as a result of using MyFitnessPal.  *Id.* §§ 12-13

5   at 25.  Under Armour expressly disclaimed any alleged promises of complete security

6   when it informed Plaintiff that MyFitnessPal would be provided on an "as is" and "as

7   available" "with all faults basis."  *Id.* § 12 at 27.  Having failed to address those

8   deficiencies in her opposition, Plaintiff's contract claim should be dismissed.

9        Plaintiff also cannot overcome the limitation-of-liability provisions to which

10  she agreed.  Faced with those provisions, Plaintiff responds only by arguing that such

11  provisions do not exculpate gross negligence.  Plaintiff is grasping at straws, given her

12  utter failure to allege any facts showing gross negligence.  Indeed, under Plaintiff's

13  view, *every* data breach would amount to gross negligence on the part of the

14  defendant.  And that surely is not the law.

15       Plaintiff cites *Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt., Inc.*, 95 F.

16  Supp. 3d 886 (D. Md. 2015).  But *Pasternak* is a far cry from the facts pled here.  As

17  that court held, to show gross negligence, the "plaintiff must allege that the defendant

18  intentional[ly] fail[ed] to perform a manifest duty in reckless disregard of the

19  consequences as affecting the life or property of another or thoughtless[ly]

20  disregard[ed] the consequences [of its breach of duty] without the exertion of any

21  effort to avoid them."  *Id.* at 895 (quotations omitted).  Plaintiff pleads no

22  "intentional" conduct or "thoughtless disregard" here.  Indeed, in *Pasternak*, the

23  defendant specifically promised to store the plaintiff's files in a "Vault Storage," but

24  did not do so as promised and despite the plaintiff's numerous instructions to do so.

25  *Id.* at 899.  Rather, the defendant stored them in a warehouse, the conditions of which

26  "were dangerous, the boxes were stacked precariously, order pickers ran into the

27  'poorly designed' storage racks twice, the temporary employee whose collision in an

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   order picker caused the June 2012 accident was not certified, and the roof had

2   collapsed once before." *Id.*  No such facts are pled here.  Unlike *Pasternak*, Plaintiff

3   does not and cannot allege that Under Armour intentionally failed to employ any

4   promised security safeguards.  Unlike the plaintiff in *Pasternak*, she does not even

5   identify any such safeguards.  Nor can Plaintiff overcome Under Armour's

6   admonitions regarding its limited ability to safeguard her data from hackers.  Peters

7   Decl. ¶ 4, Exh. A (2016 Terms) §§ 1, 12 & 13.  That is leagues from the defendant in

8   *Pasternak*, whom the court deemed a bailee in the legal sense, and which "promoted

9   the security of its Vault Storage but then did not take any measures at all to safeguard

10  Plaintiff's Vault Boxes and Vault Files, as it was obligated to do, by filing them in

11  Vault Storage, as it promised."  *Pasternak*, 95 F. Supp. 3d at 899; *compare Jeffries v.*

12  *Boston Sci. Corp.*, 2017 WL 2645723, at *5 (D. Md. June 20, 2017) ("Jeffries has not

13  alleged facts that would show any breach of any duty of care, let alone facts that

14  would show that BSC acted in reckless disregard of the consequences as affecting the

15  life or property of another.").  Here, in contrast to *Pasternak*, Plaintiff merely alleges

16  Under Armour "fail[ed] to provide adequate security," "fail[ed] to protect Plaintiff and

17  Class Members' Private Identifiable Information from being foreseeably captured,

18  accessed, disseminated, stolen, and misused," and "faile[ed] to timely discover and

19  provide clear notification of the data breach to consumers."  Compl. ¶¶ 54-55.  No

20  "intentional" acts or omissions are pled.  *Pasternak* does not apply.

21      Having failed to allege any gross negligence on the part of Under Armour

22  whatsoever, Plaintiff cannot escape the limitation-of-liability provisions.  Because

23  those provisions bar the damages Plaintiff seeks here, her contract claim fails for lack

24  of damages.

25      **E.    <u>Plaintiff Fails To Salvage Her Negligence Claim</u>**

26      Plaintiff's negligence claim fails for the reasons stated in the moving papers,

27  and the opposition fails to persuade otherwise:

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*First*, Plaintiff's bare-bones allegations fail to allege any facts plausibly showing negligence—under California or Maryland law.  *See*, *e.g.*, *Dynport Vaccine Co. LLC v. Lonza Biologics, Inc.*, 2015 WL 2036510, at *4 (D. Md. Apr. 30, 2015) ("Because DynPort's complaint does not allege factual content from which the Court can infer a tort duty of care or a breach of anything other than contractual duties, Count II founded upon negligence fails to state a claim for relief."); *Razuki*, 2018 WL 2761818, at *2 (dismissing negligence claim based on data breach because plaintiff's "allegations are too vague for the Court or [the defendant] to evaluate").  Plaintiff does not plead any facts showing negligence; rather, through conclusory assertions and labels, she really seeks to impose strict liability on Under Armour simply because it was breached.  That will not do.

*Second*, even if Plaintiff had plausibly alleged *Twombly/Iqbal*-sufficient facts establishing negligence, she still fails to overcome the economic loss rule.

Plaintiff cites *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756 (Md. 1986), suggesting that case creates an exception to the economic loss rule where an "intimate nexus" exists between the parties.  Opp. at 14:12-14.  But no "intimate nexus" exists here.  Indeed, the *Jacques* court noted that the "mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort."  *Jacques*, 515 A.2d at 759.  In *Jacques*, the unique circumstances included an unusual financing agreement that left the plaintiffs in a vulnerable position with respect to the defendant bank and its awareness of that vulnerability.  *Id.* at 762-63.

Given those highly unique and unusual circumstances, the Fourth Circuit has interpreted the holding of *Jacques* as limited to circumstances involving a vulnerable party.  *Lawyers Title Ins. Corp. v. Rex Title Corp.,* 282 F.3d 292, 294 (4th Cir. 2002).  And it deemed the *Jacques* holding as a "narrow exception" to the general rule that "Maryland does not recognize a cause of action for negligence arising solely from a

REPLY IN SUPPORT OF MOTION
TO COMPEL ARBITRATION AND TO DISMISS

contractual relationship between two parties." *Id.* at 293-94.  Under that general rule, a tort duty arises only if a contractual obligation is accompanied by an independent duty owed to a vulnerable party based on a special relationship between the parties. *Id.* at 294.  Here, Plaintiff fails to plead any unique or independent duty owed to her by Under Armour that is separate from its alleged contractual obligations to each and every MyFitnessPal user.  That is hardly an "intimate nexus" or a special relationship, but one allegedly shared with millions of MyFitnessPal users.

Moreover, Plaintiff's contract and negligence claims are one-and-the-same.  Both allege Under Armour breached vague and nebulous obligations to safeguard Plaintiff's information and to notify her of the breach.  *See*, *e.g.*, *McKinney v. Fulton Bank*, 776 F. Supp. 2d 97, 105 (D. Md. 2010) ("Indeed the claims that Fulton Bank failed to convert the loan to a permanent loan and altered the terms of the loan after the closing appear in both Count VI, for negligence, and Count V, for breach of contract.").  Quite simply, "there are no special circumstances warranting a departure from the general rule that contractual relationships do not give rise to causes of action for negligence." *Id.* at 105.

The rule is the same under California law, which precludes the recovery of economic losses in tort in the absence of a special relationship—and those relationships simply do not exist in the context of a standardized service offered to millions of users.  Plaintiff does not and cannot show MyFitnessPal was "'intended to affect' [her] in any way particular to [her], as opposed to all potential [MyFitnessPal users]." *Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1455 (1995).  Under Armour "did not design [MyFitnessPal] with Plaintiff, or any *particular* use, in mind." *Elsayed v. Maserati N. Am., Inc.*, 215 F. Supp. 3d 949, 964 (C.D. Cal. 2016).  To the contrary, as Plaintiff concedes, Under Armour provides the same service to "millions" of users.  Compl. ¶ 34; *Michael v. Honest Co., Inc.*, 2016 WL 8902574, at *24 (C.D. Cal. Dec. 6, 2016) ("The FAC does not adequately plead any exception to the

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

19

economic loss doctrine.  It does not allege more than a relationship between Plaintiffs and Defendant that is an 'everyday consumer transaction.'")  Plaintiff's negligence claim fails under either Maryland or California's version of the economic loss rule.

**F.   Plaintiff Fails To Salvage Her Implied Covenant Claim**

Plaintiff does not even address the infirmities in her implied covenant claim, and it should be dismissed accordingly.  As set forth in the moving papers, "there is no independent cause of action at law in Maryland for breach of the implied covenant of good faith and fair dealing."  *Mount Vernon Properties, LLC v. Branch Banking & Tr. Co.*, 907 A.2d 373, 381 (Md. App. 2006).  And even if California law applied, the claim fails nonetheless.  It is wholly duplicative of Plaintiff's deficient contract claim. *U.S. Bank. N.A. v. Miller*, 2013 WL 12183652, at *5-6 (C.D. Cal. May 8, 2013).

**G.   Plaintiff Fails To Salvage Her Claim For "Violation Of State Data Breach Acts"**

Plaintiff identifies one "state data breach act" only—California's Customer Records Act (the "CRA").  But even if California law applies, Plaintiff's claim would fail.  Plaintiff "needs to provide more facts to support h[er] various theories for a CRA violation," as opposed to "conclusory allegations about security, data disposal, and notification."  *Razuki*, 2018 WL 2761818, at *2.  Why were Under Armour's security measures unlawfully inadequate?  Why does a mere four days from the date of discovery constitute an unlawful delay in notification?  And most important, how did Plaintiff incur any actual damages by virtue of the breach itself, considering the information taken would not enable a hacker to commit fraud in Plaintiff's name, or by a mere four days' "delay" in notification?  Plaintiff must "allege that the damages *flowed from the delay*, and not just that the damage flowed from the intrusion."  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 1010 (S.D. Cal. 2014) (emphasis added) (dismissing breach-notification delay claim on similar grounds); *see also Dugas v. Starwood Hotels & Resorts Worldwide, Inc*.,

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

REPLY IN SUPPORT OF MOTION
TO COMPEL ARBITRATION AND TO DISMISS

2016 WL 6523428, at *7 (S.D. Cal. Nov. 3, 2016) (dismissing CRA claim where "Plaintiff has failed to trace any harm from … delayed notification or to demonstrate a nexus between the alleged harm flowing from the delayed notification and Defendants' actions"); *Corona v. Sony Pictures Entm't, Inc.*, 2015 WL 3916744, at *9 (C.D. Cal. June 15, 2015) ("Plaintiffs have not alleged direct economic damages resulting from Sony's alleged failure to timely notify.").  Plaintiff's failure to plead such facts demonstrates that any claim under the CRA would fail.

## IV.   <u>CONCLUSION</u>

For these reasons and for those set forth in the moving papers, the Court should order Plaintiff to arbitrate her claims on an individual basis and dismiss this lawsuit in its entirety.  Alternatively, should the Court decline to enforce Plaintiff's arbitration agreement (and it should not), the Court should dismiss Plaintiff's complaint in its entirety under Rule 12(b)(6).

DATED:  June 28, 2018                **HUNTON ANDREWS KURTH LLP**

By:   /s/ Ann Marie Mortimer
Ann Marie Mortimer
Attorneys for Defendant
UNDER ARMOUR, INC.