UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-4032 FMO (Ex) | Date | February 11, 2019 |
|---|---|---|---|
| Title | Rebecca Elizabeth Murray v. Under Armour Inc., et al. | | |

| Present: The Honorable | Fernando M. Olguin, United States District Judge | | |
|---|---|---|---|
| Vanessa Figueroa | None | None | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |

Attorney Present for Plaintiffs:     Attorney Present for Defendants:

None Present                         None Present

**Proceedings:**     (In Chambers) Order Re: Pending Motion

Having reviewed and considered all the briefing filed with respect to defendant Under Armour Inc.'s ("Under Armour" or "defendant") Motion to Compel Arbitration and to Dismiss or Stay Litigation (Dkt. 12, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**BACKGROUND**

Plaintiff filed her complaint on April 4, 2018, in Los Angeles County Superior Court. (See Dkt. 1-1, Complaint at ECF 9). On May 15, 2018, defendant removed the action to this court. (See Dkt. 1, Notice of Removal). Plaintiff asserts causes of action for: (1) breach of implied contract; (2) negligence; (3) unfair competition and unfair business and fraudulent/deceptive business practices in violation of Cal. Bus. & Prof. Code §§ 17200, et seq.; (4) invasion of privacy; (5) negligence per se; (6) "breach of the covenant of duty of good faith and fair dealing"; and (7) violation of California's data breach statutes, Cal. Civ. Code §§ 1798.80 et seq. (See Dkt. 1-1, Complaint at ¶¶ 40-111). Plaintiff brings this suit as a putative class action. (See id.).

Defendant operates the MyfitnessPal and MapMyFitness apps (collectively, the "apps"), whose purpose "is to give users [the] ability to meet physical fitness goals and/or to track information regarding their health[.]" (Dkt. 1-1, Complaint at ¶ 14). In order to register for these apps, a person must submit his or her email address and debit or credit card information. (See id.).

On March 25, 2018, defendant discovered a major data breach concerning the apps. (See Dkt. 1-1, Complaint at ¶ 15). According to plaintiff, "sensitive personal data for up to 150 million Americans" was compromised in the breach. (See id.). This personal data included app users' names, email addresses, home addresses, and credit and debit card numbers. (See id. at ¶ 3). Plaintiff maintains that defendant failed to put in place proper cybersecurity measures. (See id. at ¶¶ 23, 30). As a result of the breach, plaintiff and other class members face a higher risk of becoming victims of fraud and identity theft. (See id. at ¶ 25).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-4032 FMO (Ex) | Date | **February 11, 2019** |
|---|---|---|---|
| Title | **Rebecca Elizabeth Murray v. Under Armour Inc., et al.** | | |

## **LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., provides that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "both a liberal federal policy favoring arbitration[] and the fundamental principle that arbitration is a matter of contract[.]" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S.Ct. 1740, 1745 (2011) (citations and internal quotation marks omitted). "The basic role for courts under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Kilgore v. KeyBank, Nat'l Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (internal quotation marks omitted). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

The FAA "calls on courts to 'rigorously enforce agreements to arbitrate.'" Samson v. NAMA Holdings, LLC, 637 F.3d 915, 923 (9th Cir. 2010) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242 (1985)). It creates "a body of federal substantive law of arbitrability," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983), which "preempts contrary state law." Mortensen v. Bresnan Commc'ns, LLC, 722 F.3d 1151, 1158 (9th Cir. 2013). "In other words, a court cannot enforce state laws that apply to agreements to arbitrate but not to contracts more generally." Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1260 (9th Cir. 2017); Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.") (emphasis in original). "[E]ven generally applicable state-law rules are preempted if in practice they have a 'disproportionate impact' on arbitration or 'interfere[] with fundamental attributes of arbitration and thus create [] a scheme inconsistent with the FAA.'" Mortensen, 722 F.3d at 1159 (quoting Concepcion, 563 U.S. at 342-44, 131 S.Ct. at 1747-48). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25, 103 S.Ct. at 941; see Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1022 (9th Cir. 2016) ("Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration."); see also Nguyen v. Applied Med. Res. Corp., 4 Cal.App.5th 232, 247 (2016) ("In keeping with California's strong public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration.").

"The party seeking to enforce an arbitration agreement bears the burden of showing that the agreement exists and that its terms bind the other party." Gelow v. Cent. Pac. Mortg. Corp., 560 F.Supp.2d 972, 978 (E.D. Cal. 2008); see Sanford v. MemberWorks, Inc., 483 F.3d 956, 963 n. 9 (9th Cir. 2007) ("The district court, when considering a motion to compel arbitration which is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-4032 FMO (Ex) | Date | February 11, 2019 |
|---|---|---|---|
| Title | Rebecca Elizabeth Murray v. Under Armour Inc., et al. | | |

opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.") (internal quotation marks omitted). Once the moving party has met this initial burden, "the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc., 497 F.Appx. 740, 742 (9th Cir. 2012); see Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal.4th 223, 236 (2012) ("[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability."). "When evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." Totten v. Kellogg Brown & Root, LLC, 152 F.Supp.3d 1243, 1249 (C.D. Cal. 2016) (internal quotation marks omitted); see Geoffroy v. Wash. Mut. Bank, 484 F.Supp.2d 1115, 1119 (S.D. Cal. 2007) ("Courts have employed a summary judgment approach for such hearings [on motions to compel arbitration], ruling as a matter of law where there are no genuine issues of material fact."); Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc., 925 F.2d 1136, 1141 (9th Cir. 1991) ("Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement[, and the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.") (internal quotation marks omitted).

**DISCUSSION**

I.  THE ARBITRATION AGREEMENT.

The present dispute stems from an arbitration agreement defendant claims plaintiff assented to as a condition for using the apps. (See Dkt. 12, Motion at 4). Defendant argues that plaintiff agreed to arbitrate not only her claims, but also the antecedent question of arbitrability itself.[1]  (See id. at 6-9). For her part, plaintiff contests whether she was ever a party to an arbitration agreement. (See Dkt. 16, Opposition to Motion to Compel Arbitration and Dismiss or Stay Litigation ("Opp.") at 7-8).

Defendant, as the party seeking to enforce arbitration, bears the burden of demonstrating the existence of an agreement to arbitrate. See Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014) ("Sirius XM, as the party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence."); Installit,

---

[1] Defendant points out that the parties had at least two separate arbitration agreements, the first of which plaintiff assented to in 2012, and the latter of which dates to 2016. (See Dkt. 24, Reply at 1). But defendant gives the court no reason to believe that the 2012 agreement remains in force given the formation of the more recent agreement, (see, generally, id.; Dkt. 12, Motion), so the court will consider only the 2016 agreement for purposes of this order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-4032 FMO (Ex) | Date | February 11, 2019 |
|---|---|---|---|
| Title | **Rebecca Elizabeth Murray v. Under Armour Inc., et al.** | | |

Inc. v. Carpenters 46 N. Cal. Counties Conference Bd., 214 F.Supp.3d 855, 859 (N.D. Cal. 2016) ("The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability.") (internal quotation marks omitted). Under the circumstances, the court is persuaded that defendant has met its burden here. Specifically, the applicable Terms of Use for the MyFitnessPal app provide that:

> To the maximum extent permitted by applicable law, you and Under Armour agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action. Except where prohibited, you and we agree to submit to the personal and exclusive arbitration of disputes relating to your general use of the Services under the rules of the American Arbitration Association.

(Dkt. 12-1, Declaration of Christopher Peters, Exhibit A ("Agreement") at 30). Plaintiff states that she registered for MyfitnessPal "on or around May 29, 2012." (Dkt. 17, Declaration of Rebecca Elizabeth Murray ("Murray Decl.") at ¶ 2). But defendant "cross-referenced" plaintiff's user ID, "Beccula," "with the records of users who accepted Under Armour's 2016 Terms and Conditions." (Dkt. 24-1, Supplemental Declaration of Christopher Peters ("Peters Supp. Decl.") at ¶¶ 5-6). This revealed that plaintiff accepted the 2016 Terms of Use on May 26, 2016. (See id. at ¶ 6 & Exhibit C at ECF 392). Additionally, defendant explains that after it developed the 2016 Terms of Use, "all existing MyFitnessPal users were provided with a notification" of the updated Terms and had to accept these Terms in order to continue using the app.[2] (See id. at ¶ 7). In short, defendant has met its burden of showing the existence of an arbitration agreement.

Although plaintiff contends that her claims are not amenable to arbitration, (see Dkt. 16, Opp. at 8-13), defendant argues that the agreement places the threshold issue of arbitrability in

---

[2] Clickwrap agreements, such as the one plaintiff accepted, (see, Dkt. 24-1, Peters Supp. Decl. at ¶ 7; Dkt. 24, Reply at 4 (stating that plaintiff would have had to take "an affirmative action to accept the 2016 Terms" and Conditions in order to continue using MyfitnessPal)), have been held to be sufficient to put an individual on notice of the terms to which he or she had agreed. See, e.g., In re Facebook Biometric Info. Privacy Litig., 185 F.Supp.3d 1155, 1165 (N.D. Cal. 2016) ("Although there is no per se rule of validity or invalidity on either end, our Circuit has recognized that the closer digital agreements are to the clickwrap end of the spectrum, the more often they have been upheld as valid and enforceable."); Swift v. Zynga Game Network, Inc., 805 F.Supp.2d 904, 911-12 (N.D. Cal. 2011) ("Cases addressing modified clickwrap presentations more similar to the one at issue here, where a plaintiff was provided notice and an opportunity to review terms of service prior to acceptance, have held them sufficient to put a plaintiff on notice of the terms to which she was assenting.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-4032 FMO (Ex) | Date | **February 11, 2019** |
|---|---|---|---|
| Title | **Rebecca Elizabeth Murray v. Under Armour Inc., et al.** | | |

the arbitrator's hands.³  (See Dkt. 12, Motion at 6-9).  The court agrees with defendant.  The Supreme Court recently held that "[t]he [Federal Arbitration] Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."  Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S.Ct. 524, 527 (2019).  The Court explained "that an 'agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'"  Id. at 529 (quoting Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70, 130 S.Ct. 2772, 2777-78 (2010)).

Likewise, the Ninth Circuit allows parties to submit the question of arbitrability to an arbitrator so long as there is "[c]lear and unmistakable evidence of an agreement to arbitrate arbitrability[.]"  Mohamed v. Uber Tech., Inc., 848 F.3d 1201, 1208 (9th Cir. 2016); see Oracle Am., Inc. v. Myriad Grp. A.G., 724 F.3d 1069, 1072 (9th Cir. 2013) ("[W]hether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.") (internal quotation marks and emphasis omitted).  In Brennan v. Opus Bank, 796 F.3d 1125 (9th Cir. 2015), the Ninth Circuit held "that incorporation of the AAA [i.e., American Arbitration Association] rules" into an arbitration agreement "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."  Id. at 1130.  This is because the AAA rules provide that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement."  Id. at 1128 (internal quotation marks omitted).  However, the Brennan court "limit[ed its] holding to the facts of the present case, which . . . involve an arbitration agreement 'between sophisticated parties.'"  796 F.3d at 1131 (quoting Oracle Am., 724 F.3d at 1075 & n. 2).  In other words, the court held that incorporation of the AAA rules evinces a clear and unmistakable delegation of the arbitrability issue where the parties to the agreement are legally sophisticated, but left open the possibility that incorporation would not be clear and unmistakable evidence of delegation if one of the parties was not legally sophisticated.  See id.

In the wake of Brennan, district courts in this circuit have diverged on the question of whether incorporation of the AAA rules is sufficient to delegate the arbitrability issue to the arbitrator where one of the parties is legally unsophisticated.⁴  See Taylor v. Shutterfly, Inc., 2018 WL 4334770, *6 (N.D. Cal. 2018) (noting that "[c]ourts have diverged on whether the holding in Brennan applies to contracts involving at least one unsophisticated party" and collecting cases).

---

³ Plaintiff does not argue that her lawsuit is something other than a "dispute[] relating to [her] general use of the Services[.]" (See, generally, Dkt. 16, Opp.).

⁴ In the present case, the arbitration agreement incorporates the AAA rules.  (See Dkt. 12-1, Agreement at 30) ("Except here prohibited, you and we agree to submit to the personal and exclusive arbitration of disputes relating to your general use of the Services under the rules of the American Arbitration Association.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-4032 FMO (Ex) | Date | **February 11, 2019** |
|---|---|---|---|
| Title | **Rebecca Elizabeth Murray v. Under Armour Inc., et al.** | | |

The court agrees with Meadows v. Dickey's Barbecue Restaurants Inc., 144 F.Supp.3d 1069 (N.D. Cal. 2015) that incorporation of the AAA rules, standing by itself, does not amount to clear and unmistakable evidence that the parties agreed to arbitrate arbitrability if one of the parties is an ordinary consumer.  See id. at 1078 (there is no reason to believe that "an inexperienced individual, untrained in the law" would have understood incorporation of the AAA rules to delegate the arbitrability question to the arbitrator); Mohamed v. Uber Tech., Inc., 109 F.Supp.3d 1185, 1202 n. 16 (N.D. Cal. 2015) ("What might be clear to sophisticated counterparties is not necessarily clear to less sophisticated employees or consumers."), affirmed in part and reversed in part on other grounds, Mohamed, 848 F.3d 1201.  Therefore, the court is unwilling to conclude that incorporation of the AAA rules delegates arbitrability to the arbitrator in the present case.

Nonetheless, in light of Henry Schein and because the arbitration agreement here relegates "disputes relating to [plaintiff's] general use of the Services" and provides that plaintiff "[is] giving up [her] right to have a trial by jury" with respect to "any dispute with [defendant] arising out of or relating to [her] use of the Services," (see Dkt. 12-1, Agreement at 30-31), the court is persuaded that plaintiff clearly and unmistakably delegated the arbitrability issue to the arbitrator.[5]  See, e.g., Esquer v. Educ. Mgmt. Corp., 292 F.Supp.3d 1005, 1012-13 (S.D. Cal. 2017) (holding that incorporation of rules which give the arbitrator power to determine arbitrability, combined with agreement language providing that "any dispute or claim between the [parties] . . . must go to arbitration" clearly and unmistakably delegated arbitrability); Nevarez v. Forty Niners Football Co., LLC, 2017 WL 3492110, *11 (N.D. Cal. 2017) (finding delegation where the agreement provided that the arbitrator had authority "to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation for this Agreement[.]").

II.   THE DELEGATION PROVISION IS NOT UNCONSCIONABLE.

Plaintiff also argues that the delegation provision is unconscionable.  (See Dkt. 16, Opp. at 11-13).  She first asserts that the delegation provision is procedurally unconscionable as an adhesion contract.  (See id. at 11).  The arbitration agreement provides that it "shall be governed by and construed in accordance with the laws of the State of Maryland and controlling U.S. federal law as applicable[.]"  (Dkt. 12-1, Agreement at 29).  Under Maryland law, "[a]n arbitration provision is void if it is unconscionable."  Freedman v. Comcast Corp., 190 Md.App. 179, 207 (2010).  "[B]oth procedural and substantive unconscionability must be present in order for a court to invalidate a contractual term as unconscionable."  Id. at 208-09.

The court agrees with plaintiff that the arbitration agreement here is an adhesion contract

---

[5] Plaintiff argues that the arbitration agreement – including, apparently, the provisions delegating arbitrability – is unenforceable as an illusory contract.  (See Dkt. 16, Opp. at 8-9).  However, she confines this argument to MyfitnessPal's 2013 terms of use, not the 2016 agreement.  (See id.) (quoting language from the 2013 terms that allowed defendant to change the agreement at any time upon giving notice).  Therefore, plaintiff's argument is unpersuasive.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-4032 FMO (Ex) | Date | **February 11, 2019** |
|---|---|---|---|
| Title | **Rebecca Elizabeth Murray v. Under Armour Inc., et al.** | | |

because it was "drafted unilaterally by the dominant party and then presented on a take-it-or-leave-it basis to the weaker party who has no real opportunity to bargain about its terms." Walther v. Sovereign Bank, 386 Md. 412, 430 (2005) (internal quotation marks omitted). Nonetheless, "[a] contract of adhesion is not automatically deemed per se unconscionable." Id. Instead, the court "must examine the substance of the particular provision at issue, the arbitration clause, to decide whether it is unconscionable. To that end, [the court] must consider whether the terms in the arbitration clause are so one-sided as to oppress or unfairly surprise an innocent party or whether there exists an egregious imbalance in the obligations and rights imposed by the arbitration clause." Id. at 431 (emphasis omitted).

Plaintiff fails to come forward with a convincing reason why the delegation provision of the arbitration agreement is substantively unconscionable. (See, generally, Dkt. 16, Opp.). Indeed, her only arguments as to substantive unconscionability go to provisions of the arbitration agreement beyond the delegation clause.[6] (See id. at 12-13). In sum, plaintiff has not shown that the delegation provision is substantively unconscionable, and in light of the fact "that both procedural and substantive unconscionability must be present in order for a court to invalidate a contractual term as unconscionable[,]" the court declines to hold the delegation provision unenforceable. Stewart v. Stewart, 214 Md.App. 458, 478 (2013).

**CONCLUSION**

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant's Motion to Compel Arbitration and to Dismiss or Stay Litigation **(Document No. 12)** is **granted**.

2. The above-referenced action is **stayed** pending resolution of the arbitration proceedings. The Clerk shall administratively close the case. See Dees v. Billy, 394 F.3d 1290, 1293-94 (9th Cir. 2005)

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | vdr | |

---

[6] Specifically, plaintiff argues for substantive unconscionability on grounds that the agreement would force her to travel from California to Maryland to litigate her claims, and that the one-year limitations period for her claims is unreasonably short. (See Dkt. 16, Opp. at 12-13).